Chief Justice Robertson
delivered the Opinion of the Court.
The defendants in error, as constituting one of two stocks of the legatees of Robert Moore, deceased, having obtained, in a joint suit in chancery, a several decree for about two thousand three hundred dollars to each, against Francis Johnson, executor of the will of said testator, and against his co-plaintiffs in error, as his sureties—the plaintiffs, now seeking a reversal of that decree, rely on various suggestions of error; in considering which, we shall specially notice such only as are deemed separate, distinct, and pertinent.
The will of Robert Moore (who died in 1819,) after making some specific devises to Martin Grider and Peter R. Beauchamp, the husbands of his only, two children, contains the following provision: — “And, as it respects “ all the rest of my estate, both real and personal, my “ will and desire is, that it be kept and remain in a fund “ until my daughters, Elizabeth Beauchamp and Sally “ Grider, shall have had their last children — and then to. “ be divided equally among all my grand-children who, “ shall then be living. It is my will and desire that the, said fund be kept at interest until the time it shall be. *71 “ divided as aforesaid. It is my will and desire that my slave Will shall not be sold, nor pat out of the family, “ except Mrs. Moore, who owns his wife, shall choose “ to buy him — in such case, he may be sold to her, as “ she owns his wife, and I desire he shall not be parted “ from his wife and family, and to be hired in the family, “ or neighborhood, at a reasonable fate, to some good “ master, and the hire and money arising from his sale, “ if sold, to belong to the same fund for my said grand- “ children — requiring them (the executors,) in the first “ place, to pay all my just debts.”
To a suit by legatees against an ex’or, to have the estate settled, and their legacies paid, all the legatees should be parties, and the decree should settle the whole matter. If more than one suit is pending, they may be consolidated. — But, where it appeared, that some of the legatees, (defendants in this case,) had obtained decrees, in another suit, for their portions, it was proper to dismiss the bill as to them. The ex'r cannot complain that the dismissal was without prejudice, as the first decree would bar another suit.
Johnson alone undertook the execution of the will.The bill in this case was filed against Crider’s children, as well as the executor and his sureties, in the year 1833; and having been dismissed without prejudice as to those children, the final decree was rendered in September, 1835.
Among the objections made to the decree, the first we shall notice is, that the Circuit Court erred in dismissing the bill, without prejudice, as to Grider’s heirs; and in not concluding their claims as legatees, together with those of their co-legatees in whose favor the decree was rendered.
As an abstract proposition, it is undoubtedly true that, in order to prevent multiplication of suits and secure equal and exact justice, especially to the executor and his sureties, all the legatees should have been parties in the same suit for adjusting the. legacies, and' that a decree should have, been rendered as to the whole at the same time. But Johnson had, in an amended answer, filed just before the final hearing of the case, averred that Grider’s heirs had previously obtained, in a different suit, a decree for their legacies; and the decree in this case recited, as the reason for dismissing the bill as to them, the fact that the parties had agreed that this allegation in Johnson’s answer was true. Taking this, therefore, to be true, as we feel that we now should do, it seems to us, that the plaintiffs in error have no cause to complain that Grider’s heirs were not concluded by the decree in this case. If both suits were pending at the same time, the plaintiffs might have had a consolidation: but having waived that right, and permitted a decree to be rendered *72 in favor of Grider’s heirs, they had not, therefore, a right to object to a separate decree in favor of the defendants. Nor have they just cause to complain, that the cross bill of Grider’s heirs was not, for the reason suggested and agreed, dismissed absolutely, so as to bar any new suit by them for the same cause; because the decree which those heirs have obtained, will have all the effect in that respect, to which it could have been entitled in this case; or which could have resulted from an absolute dismission of the cross bills.
Where a legacy is given to be divided and paid over, when a certain event shall have occurred— as when daughters shall have had their last children, a reasonable certainty that the event has happened (tho’ it may be possible that it has not,) will entitle the legatees to decrees for their legacies ¡especially, if they give bonds to indemnify the ex’r against the possible contingency of an over-payment.
Second. Tho next objection to be considered, is that the decree was premature, because, as argued, it was not certain that either Mrs. Grider or Mrs. Beauchamp would never have another child. That this is not, nor can be, absolutely and perfectly certain as long as either of those ladies shall live, may be admitted. But reasonable moral certainty is, we apprehend, all that should be required. The object of the testator, in postponing payment to his grand-children until his daughters should have ceased child-bearing, was, we presume, only for the purpose of ascertaining, with satisfactory certainty, the persons among whom his bounty should be distributed; He did not intend that the beneficiaries should be postponed until both of his daughters shall have died.This is evident from the provisions of the will. And if, as is morally certain, he intended that his grand-children should be entitled to receive their respective legacies as soon as the utmost number he should ever have could be known with reasonable certainty, then we cannot doubt that the decree was not, as alleged, premature.For it not only appears that, at its date, Mrs. Beauchamp was about forty seven years of age, and infirm, and had not borne a child for about seven years, and that Mrs. Grider was even older and had ceased for about nine years to bear children — but medical men, well acquainted with both of those matrons and all the material facts, deposed confidently that, if either of them should ever have another child, such an event would be not only extraordinary, but almost miraculous. Unless, then, the grand-children cannot be entitled to payment as long as either of the mothers shall be alive, it seems to us *73 clear, that they should be deemed to have been entitled at the date of the decree. And, if the remote possibility of another unexpected birth should have had any influence on the Circuit Court, all that it should have been entitled to, was that yielded to it, by requiring bond and security to indemnify the executor against any such improbable contingency.
The funds of art estate being out upon loan, as required by the will, it is error to decree that the ex’or, who has been guilty of no gross neglect in that respect, pay the legatees in money: they should be required to take the securities.
Legatees were entitled to the proceeds of a debt, which the ex’or was enjoined from collecting; a decree against him in favor of the legatees, including the amount of that debt, is, so far, premature & erroneous.
Where depositions were read, and it appears that the adverse party objected for want of notice, and the record fails to show that he was present or had notice when they were taken, their admission must be deemed an error.
Third. The next objection worthy of special consideration, is that the Circuit Court erred in decreeing a gross payment in money, when the executor had in his possession, securities, taken in good faith, and remaining uncollected. And, to some extent, this objection seems to be reasonable. Although the executor has not exhibited those securities, or made any proof respecting them, yet it appears from the pleadings, that, to some extent, there are uncollected securities for portions of the trust fund, which it was his duty to loan out.
And as there is no proof that, as to them, he was guilty of any culpable negligence or delinquency, and as, without his fault, those securities may not perhaps all be made available, we are of the opinion that the defendants should have been required to take them.
Fourth. The next objection is equally reasonable. As the Circuit Judge had, by his judicial order, during the pendency of this suit, at the instance of the defendants, enjoined the executor from enforcing a judgment for upwards of nine hundred dollars, which he had obtained against their father and next friend, the amount of that judgment ought not to have been, as it seems to have been, charged, by the final decree, against the plaintiffs; and the more especially, as it does not appear that the injunction had ever been dissolved.
Fifth. It appears that several depositions which were read for the defendants, on the hearing of the cause, were objected to, on various grounds: one of which, as stated in the record, was that there had been no notice. And, as the record exhibits no evidence that there had been any notice as to the time and place of taking them, and it does not appear that any of the plaintiffs were present when they were taken, it is evident, that, if the record, as it is in this Court, and as, therefore, we are *74 bound to presume — contains all the facts of the case, the Circuit Judge erred in admitting the depositions.
A decree for legacies due to infants, provided that it should not be executed until statutory guardians were appointed for them, and the court should approve refunding bonds: this was well; an insolvent next friend should not be permitted to receive the legacies, or to exercise any discretion in the case. —The regular course was, not to await the action of another tribunal in appointing guardians, but to appoint a trustee to receive and secure the money.
The funds of an estate, at the time of a settlement with the ex’or, consisted in part of interest accrued, but not collected, upon outstanding loans: it was unjust and erroneous to require him to pay interest on the aggregate balance (including interest which did not bear interest,) from the time of the settlement.
Sixth. The plaintiffs also object to so much of the decree as suspends the execution of it until the delivery of refunding bonds, and until the appointment, by the County Court, of statutory guardians for the infant defendants in error. They insist that this was altogether irregular, and may be injurious to them. Although, in this respect, the decree is rather ambiguous, and might therefore be misunderstood or perverted, nevertheless, understanding it, as we do, to mean that no money should be paid under it until statutory guardians should be appointed to receive it, and that no execution should be issued on it until the Court, and not merely the clerk, should be satisfied that proper refunding bonds had been given, it is deemed sufficiently safe and just to the plaintiffs in error.
The insolvent next friend should not have been permitted to receive any portion of the sums decreed; nor did the Court act discreetly in permitting him to exercise any discretion in the case; but though it would have been more regular to appoint a responsible trustee to receive and secure the money, the defendants have no right to complain that the decree was suspended on the contingent and extraneous event of an anticipated appointment of ordinary guardians, by another tribunal.
Seventh. The last complaint we shall notice, is that the decree charged interest on the whole amount of principal and interest due in 1830, when a settlement was made in the County Court. As it appears from that settlement, that, when it was made, the whole or chief portion of the funds in the executor’s hands, consisted of uncollected securities, it would appear to have been unjust to exact from him interest on interest then accruing, for the whole time which has since elapsed. But this error is doubtless more than compensated by charging him previously with only current interest, when if is not only evident that, it was his duty to make interest, as well as principal, productive — but is almost certain that he did make more, and much more, than current interest,from the death of the testator to the County Court settlement.
A settlement of an executor's account in the County Court, however erroneous, is good prima facie evidence till it is reversed; and when used incidently (as, for evidence, in another suit,) it is conclusive, except so far as it may be proved to be incorrect.
A testator directs that a portion of his estate shall constitute a fund to be kept out at interest, until a certain epoch; then to be divided among legatees: it was, no doubt, his intention that the interest should be collected, from time to time, added to the principal, and made productive; and it was the duty of the ex'or so to manage it; and, from the fact that it was his duty, the court presumes that he did so, and holds him accountable for interest accordingly.
The foregoing are the only points embraced by the assignment of errors, which the ultimate justice of the case requires us to consider. But as the decree must, on some of those grounds, be reversed, it is proper, in remanding the case, to notice some particulars in which the defendants in error may also be erroneously prejudiced.
An exparte settlement, by two commissioners of the County Court, approved and recorded in 1830, was the basis of the decree. That settlement seems to have been made chiefly upon the inventory, without a proper scrutiny of documents, or requisition of the usual proofs, by either the commissioners or the County Court; and no vouchers, as we are bound to infer were filed, as all should have been, with the report m the County Court.
Nevertheless, however erroneous such a settlement may have been, it is, until reversed, legal prima facie evidence; and when, as in this case, used incidentally, it must be deemed conclusive, except so far as it shall have been successfully assailed. The bill attempts to surcharge and falsify it in many respects; but of these we shall now notice only two particulars.
(1.) As already suggested, it cannot be consistent with the testator’s, intention, or with the just rights of his legatees, that his executor should be charged with no more than the current interest on the principal fund, for the one entire period which had elapsed at the time of the settlement. It was the intention of the testator, that the trust fund — the whole of it, including accruing interest — should be made productive. It cannot be believed, that he could have contemplated such improvidence or waste as the indefinite and total unproductiveness of the annual, or some other periodical, increment of the principal fund; or that it should be used by the executor for his own benefit., It was doubtless his expectation, that his executor would, like a man of ordinary prudence in his own affairs, loan the principal fund, so as to produce an interest annually, and payable from year to year, or at some other short and convenient periods; and that the interest, when due. should be converted into principal, and thus produce a progressive augmentation *76 of the productive capital. And has it been suggested, or can it be presumed, that the executor never collected any interest? And, if he collected any, did he not either appropriate to it to his own use, or loan it for the benefit of the legatees? It was his duty to reserve, and, as far as he. could, to collect annual interest, and make it, whenever he could, productive principal: and the Court must presume that he did so.
A suit in ch’y is instituted against, an ex’or, to compel payments of legacies. It appears that, there had been a fund under his care, for many years; lent out, in pursuance of the will and producing interest - which he, it is presumed, collected and converted into principal, from time to time. But in in a county court settlement — upon which he relies — he was only charged with simple interest upon the fund, from the time it came to his hands till the settlement: held that this was good ground for impeaching the settlement, so far as to require the ex’or lo produce, under oath, an account, which, it is presumed he kept, showing what interest he received, and how it was used— which account, will he open to examination and correction. And upon the consideration of all the facts which can be ascertained, he must lie made to account for all interest upon interest which lie actually received, or which he might have received by using common diligence and prudence — a liberal allowance being made for casualties. But for the county court settlement, he would be held liable for compound interest at once, by the adoption of rests— see p. 80.
And whatever may, in this respect, be judicially gleaned from the very confused and imperfect record before us, there can be no doubt that the executor ought to have been charged, for interest, more than he has been burthened by the decree: but exactly how much more, the facts before us would not enable us to determine without the hazard of error and injustice. Safety and justice to all concerned require further preparation on this point.
As it is evident that Johnson ought to have made, and did make, at least some interest upon interest, the ex parte settlement in the County Court has been, in that important particular, so far falsified, as to make it his duty to exhibit an account, upon oath?of the interest he received from time to time, and an explanation in detail, as far as he may be able, of his conduct throughout, in regard to interest. It was his duty to have kept an account of that, as well as all other matters committed to his charge. And, as he does not seem to have kept, or exhibited, such an account as he ought to have done, and as also, from the nature of the case, the legatees cannot be expected to be able to establish, by other means than a detailed account from him self, the facts which should be known, before justice can be done, in this particular, the Court should, whenever there is doubt, incline to such a conclusion as may be most consistent with that degree of vigilance and fidelity which ought to have been observed, and to presume that interest was made productive, as far as it may be reasonable to infer that *77 it might, without culpable delinquency, have been so employed, and in the exercise of a sound and provident discretion, should have been. The principal itself may not have been always yielding an interest; but it should be presumed, that he will be able to state when and why and how for, it was not so; as also, when and why and how for interest was not made to produce periodical profit. And, from all the facts, when disclosed, the Court, by a liberal construction as to the presumed occasional unproductiveness of interest, when compared with that of the principal fund, should charge him with so much for profits of interest, as it may be reasonable to presume that he, in fact, made, or as, without fraud or gross negligence, ought to have made. This, we know, will be difficult, and exact justice in this respect cannot be expected. All that can be hoped for, is such an approximation to what is right, as general principles and the facts of the case may enable the Court to make from general deductions.
If an ex’or fails; to render a satisfactory account of his receipts of interest, & employment of it, the court should adopt periodical rests-annual biennial, or less' frequent; according to the circumstances of the case—for compounding the interest.
An executor had funds in his hands, to be lent from 1819 to 1830-35, embracing the time when ‘‘the relief system”— recognised as part of the history of the country— prevailed: held, that, so far as he shall fail to render an account of his actual receipts of interest, and interest upon interest, or to account for his failure to collect and employ the interest as"it accrued, there shall be a rest, for adding interest to principal, once in three years, during the continuance of the relief system, and once in two years afterwards.
If he renders an account, it will be open to proof on both sides.
Should the executor exhibit a satisfactory account, or furnish such data as may enable the Court, by the application of a liberal scale of probabilities and allowances for delays and casualties, to come to some average result, reasonably just and certain, the account should be settled according to the general rules just suggested. But should he persist in foiling to present an interest account, or such an one as may seem to be fair and candid, the court should resort to another and harsher rule for testing his liability; and that is, to adopt periodical rests for the accumulation of principal by intermediate interest.
This rule, adopted in England, as not only salutary, but necessary in such a state of case, is founded in principles of justice and sound policy., and has been recognized by courts of equity in our own country. Schieffelin vs. Stewart, 1 Johnson's Chy. Rep. 624, and the cases therein cited, and Evertson vs. Tappen, 5. Ib. 497. The principle of the rule is, that whatever a trustee shall have made out of a fund committed to his care, belongs in *78 equity to the cestui que trust; and the reason of the rule is the presumption arising from his failure to exhibit an account, and the impossibility of doing justice without, subjecting him to such an arbitrary test. It is but too. often the habit of fiduciaries, and especially executors, to make a profitable trade of their trusts, for their own benefit, rather than for that of those for whom they act; and if such a rule of responsibility as that we have suggested, should not be sometimes resorted to, frauds and. unjust speculations, and extensive spoliations, would be easy and frequent, and in the language of Lord Loughborough, “the office of trustee would be canvassed for.” To prevent such a consequence, the adoption of rests is the only effectual and most proper remedy when an executor, whose duty it was to make interest, fails to exhibit an account, and it is not unreasonable, especially when it is evident, that he made interest productive, or when it was his duty to do so, and he has failed to show that he did not. In Newton vs. Bennet (1 Bro. 359,) annual rests were adopted; so likewise, in Foster vs. Foster (2 Ib. 616.) Semiannual computations of interest upon interest, were directed in Raphael vs. Boehm (11. Vez. 92;) and the general rule as to periodical rests, was not only sanctioned by Lord Eldon, but also, by Sir Wm. Grant, in Dornford vs. Dornford (12. Vez. 127.)
If Johnson, as he ought to have done, and prima facie should be presumed to have done, collected interest at convenient and usual periods, and loaned it from time to time, he should, of course, account for it; and so far as he shall fail to do so, or to show some satisfactory reason for occasional unproductiveness of interest or of principle, his responsibility must be regulated by some fixed and arbitrary rule of equity, such as that of rests.
But annual rests, would, we think, be unreasonably short. It is, known to be usual in this country, to make annual reservations of interest; and it cannot be probable that interest, when reserved by Johnson, was, in every instance, punctually paid, or if so paid, that it could instantly have been made productive. And it is a historic fact impressed indelibly on the judicial annals, that, from about the time Johnson undertook the trust, *79 until about 1826, the collection of debts was obstructed, and even sometimes altogether defeated, by a deranged and depreciated currency, and by a series of legislative enactments, denominated “the relief system,” which prevailed in Kentucky during that trying and eventful period.
A will directs that a slave shall be hired out, or sold to a particular person; the ex’or sells him to another, but the presumed object of the testator is secured: the ex’or shall not be charged with more than he got for the slave.
Payments made by an executor, should be deducted from the aggregate of the funds in his hands at the time; to charge the payments with accruing interest on their, is not the correct mode.
We have concluded, therefore, that if, on the final hearing of this case, after the return of it to the Circuit Court, the application of rests shall to any extent become necessary, it would be approximating justice as nearly as a general rule could approach it, to divide the first six years of computation into two rests of three years each, and to extend the succeeding rests beyond one year for each; We have, therefore, concluded, all things in this Case duly considered, to prescribe two equal rests of three years each for the first computations of interest upon interest, and two years for each succeeding computation, until the institution of this suit, so far as the employment of interest shall hot otherwise be ascertained, and accounted for, or some reasonable and probable explanation given respecting the collection and use of it.
If an account shall be rendered, it will, of Course, be open to proofs on both sides.
As to the slave Will, although the executor sold him, not exactly as directed, yet he did not, as we presume, frustrate or essentially evade the intention of the testator, by a bona fide sale, for a full price, to one of the testatoris family who lived near the slave’s wife. And we perceive no reason for making the executor responsible for more than the price he got and has been charged with in the settlement by the Comity Court.
(2.) It was, of course, erroneous, to some extent, to credit the executor with accruing interest oh payments made by him to creditor's of the estate:
The proper mode of allowing those credits, was to deduct each payment, at the time it was made, from the gross aggregate of principle and interest constituting the fund then in his custody.
But as the facts now exhibited in the record, will not enable the Court to adjust this Controversy with judicial *80 certainty, it will be proper, on the return of the case, for the Circuit Court to proceed, through the intervention of a commissioner in chancery, or otherwise, to ascertain all the facts which, according to the principles of this opinion, shall become necessary for a just final decree between all the parties; and also, to require a detailed and explanatory account by the executor, in a supplemental answer, and an exhibition of all his vouchers and material proofs.
We should have directed a peremtory computation by rests at once, had there been no settlement in the County Court, and had there not been apparent defects in the preparation of the case on both sides.
Wherefore, it is decreed, that the decree of the Court below be reversed, and the cause remanded, for proceedings and decree according to the foregoing opinion.