## Moore's Executor *vs* Beauchamp, &c.

ERROR TO THE BUTLER CIRCUIT.

*Executors and Administrators.   Interest.   Practice in Cháncery.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case 16.*

*Sept.* 20.

The decree heretofore made by this Court, (see 5 *Dana*, 70,) and subsequent proceedings.

THIS case was before this Court at the Spring Term, 1837, and is reported in 5 *Dana*, 70.

Upon the return of the cause to the Court below, Johnson, the executor, filed an amended answer, with a view to avoid a settlement of his accounts as executor, upon the principles laid down by this Court, in the absence of any further and satisfactory answer.   With very little further preparation of the case, the Court referred it to an Auditor, with directions, in the calculation of interest, to be governed by *rests;* the two first rests to be of three years each, and after that of two years each, till the termination of the last rest preceding the commencement of complainant's suit, and from that period till the commencement of the suit; and after that, to calculate running interest, but only upon the amount due at the termination of the rest next preceding the filing complainant's bill; and as the executor had made some loans to the parents of the legatees, and as there were other debts due him as executor, which had been permitted to run on for a long time without renewal, the Court directed such debts, or a designated portion of them, to be exempted, in the computation of interest, from the operation of rests.   The Auditor was authorized to take and report such testimony as the parties might adduce.   Upon the coming in of the Auditor's report, the executor filed exceptions to it, with very numerous specifications, nearly all of which were overruled.

As to the Grider branch of the legatees, who, after the return of the cause, filed cross pleadings, the case appears to have been settled by the executor before final decree, and also with R. C. Beauchamp, one of the complainants

MOORE'S EX'OR.
vs
BEAUCHAMP, &c.

Decree of Circuit Court.

in the case. The suit as to those parties, therefore, was dismissed.

The Court, on final hearing, decreed the executor an allowance of one thousand dollars, in addition to the allowance of $2325 79, made him by the County Court. The Court found the share of each legatee, in the whole estate, upon the coming in of the Auditor's report, to be $3167, but apprehending that there might be some error in the report, not noticed, reduced the share of each to $3000. The decree also appropriates a debt due the executor from the father of the complainants, and which had been enjoined by them, to the extinguishment, in part, of their several portions; and there being six legatees of the Beauchamp stock, the share of each of the complainants is credited by one sixth part of said debt, amounting to $306 36, which reduces the shares of each to $2693 64. The share of one of the complainants was further reduced by a payment which had been made to her guardian by the executor, to $1621 64. The Court decreed the injunction as to the debts due the executor from the father of the complainants, perpetual, and that the executor and the defendants, his sureties, pay to the complainants, Isaac H. Beauchamp, Richard N. Beauchamp, Joshua Beauchamp and Sarah Ann Beauchamp, each, $2693 64, and to complainant, Margaret E. Beauchamp, $1621 64, with interest from the 25th June, 1839, till paid.

To reverse this decree the executor again brought the case before this Court.

After numerous errors assigned, we shall proceed to notice such as are deemed deserving particular consideration: And 1st. It is insisted that upon the filing by the executor of his amended answer, he should only have been held responsible for current interest upon the funds which came into his hands as executor.

It was intimated by this Court, in the former opinion, that if, by an amended answer, the executor should give a satisfactory account of the manner in which he had managed the estate which came to his hands, and should also report an interest account from which the actual accumulations, by way of interest, could be ascertained, and it should also appear that the estate had been managed with

reasonable discretion and vigilance, it would then be in the discretion of the Court to mitigate the rigor in the computation of interest by the rests indicated, or even to abandon that mode altogether. But in the event such answer was not filed, then he was to be held liable for interest computed according to the indicated rests.

The further answer of the executor, although of great length, is indefinite, and, we think, wholly unsatisfactory. No interest account is exhibited, nor is it practicable to ascertain what amount had been actually made by the executor by the use of the funds of the estate. His inability to be more specific, he alledges, results from the loss of his account book, and as the estate principally consisted in notes for various amounts, and due at different periods, any thing like accuracy in the history of such various and complicated transactions, and during a period of nearly twenty years, from mere recollection, could not be expected.

In the opinion of this Court, therefore, the rule for the computation of interest was reasonable, and as liberal as the executor, from the facts and complexion of the whole case, was entitled to. There is nothing in the answer, nor do the facts of the case exempt him from the effects of such a rule.

But it is urged that the report is not made in pursuance of the principles even of the interlocutory decree. That the disbursements by the executor, made before the *termination* of the first rest, as well as those made between the rests afterwards, were taken out of the interest which had accrued at the time the disbursements were made— and such, from an inspection of the report, seems to be the fact. The more liberal and equitable mode would have been to have taken the disbursements from the principal, or what would, in effect, have been the same thing, to have calculated interest upon the disbursements from the time they were respectively made, till the next rest, and then to have deducted the aggregate of disbursements and interest thereon from the principal fund and interest, and this done, the residue would have become capital upon which interest would, in like manner, be computed till the next rest. The exact difference in the result of com-

MOORE'S EX'OR.
*vs*
BEAUCHAMP, &c.
putating the interest, upon the principle pursued by the Auditor and according to the more equitable rule which we have suggested, it is not important here to ascertain. The counsel for the executor or plaintiff in error have laid before us two statements, embracing the same items in the Auditor's report, except so far as it had been corrected by the Court, with the interest calculated according to the rule, in effect, which we have suggested. These *statements* or accounts are made out in mercantile style, and we are satisfied, with great accuracy. Between these statements there is a difference in the result of about $70, which is accounted for by the fact, that in one interest is calculated by the year of 365 days, and in the other, interest is calculated by days, allowing 360 days to the year. The interest is computed with rests, according to the directions to the Auditor, with this exception, that running interest is only charged from the termination of the last rest preceding the commencement of the suit.

As the account, No. 1, in which interest is computed by the year at 365 days, thus before us, is, we think, correctly made out, and as we approve of the rule and mode of computing the interest, with an exception or two, which will be hereafter noticed, and as it exhibits truly, as far as it goes, the funds in the hands of the executor, we have concluded to adopt it with a view of ascertaining the amount to which the complainants are entitled, and thus terminating an already protracted controversy.

But in the account to which we refer, and are disposed to adopt, it is insisted there are some items for which the executor should not be made responsible.

That it embraces two debts, created by the executor, one due by Henderson and the other by Clark & Coffee, which the executor has not collected and ought to be credited.

In order to entitle him to the favorable consideration of the Chancellor, in reference to these debts, he should have shown, satisfactorily, that the debts, when created, were such as a prudent and vigilant man, in the management of his own affairs, would have made, and that timely and proper exertions to collect them had proved unavailing. This, we think, he has failed to do. The

An executor claiming credits for debts lost which were of his own creation, should show that the debts were such as a prudent man, in the management of

debt upon Henderson is the most important, and the executor states in his answer, that it was secured by mortgage, and that a suit was pending for foreclosure. There is no proof in the cause that the mortgage property is insufficient for the payment of the claim.

In regard to the other debt, the executor states in his answer, that Coffee had proved insolvent, but it was expected Clark would pay.

We are very clearly of the opinion that the Court correctly refused any relief or credit on account of these claims.

The executor further relies, that he is charged with several original claims due his testator which he has not collected: but as he has failed to establish the fact of having used even ordinary diligence for their collection, and also failed to show that they were unpaid, the Court was right in overruling the exceptions in regard to them. He is charged with only one original claim, not included in the inventory—this is the claim of J. W. Miller, whose testimony in reference to it is positive and uncontradicted; except this, the executor is charged, in the account before us, with no original claim which was not embraced in and charged against him in the County Court settlement.

The executor complains that he was entitled to certain credits, which the Auditor, and afterwards the Court, refused to allow him. We are not satisfied that he showed himself entitled to any credits in addition to those which were allowed him by the Court below, and which are embraced in the account or statement before us.

We will now notice the particulars in which we think this statement is incorrect, and does injustice to the complainants.

The executor qualified in November, 1819; in March, 1820, he paid Elizabeth Moore, administratrix of Geo. Moore, $5287 26, in discharge of a debt due by his testator. This sum was paid by the executor, in notes belonging to the estate of his testator, on which, when paid, there was interest to the amount of $369. For the whole amount, thus paid, the executor is credited, and in reduction of the principal of the fund in his hands. We think the more equitable mode would have been, to have appli-

his own affairs, would have made —and that reasonable & timely exertions had been used to collect.

—And as to claims due the testator at his death, he must show the use of reasonable diligence to collect.

Moore's Ex'or.
vs
Beauchamp, &c.

ed only the principal of the notes thus used to the reduc-
tion of the fund, upon which the executor, during the first
rest of three years, was charged with interest. During
the first rest, the executor was charged with interest upon
the principal only of the notes thus used by him in the
payment of the debt in question. Giving this credit in
the more equitable way suggested, rather than in the mode
in which it is applied, would make a difference in favor
of the legatees, at the time the Auditor reported, of a
fraction less than $140.

Again, in 1837 and 1838, the executor paid over to the
legatees more than $10,000; all, or the greater portion
of which was paid in notes due the executor, as such, and
some of them, which had been wholly exempted from
the operation of rests. The whole amount paid in this
manner is applied as a credit upon the fund, upon which
the executor had only been charged with running interest
since November, 1831. We think it would have been
equitable to have adopted the mode already suggested in
regard to the payments made to Elizabeth Moore—and to
illustrate the injustice done the legatees, and the corres-
ponding gain to the executor, by the mode adopted, a sin-
gle case need only be stated. The executor had a debt
upon Martin Grider & Co. for $1433 25, due 6th Novem-
ber, 1824. When due, this debt was deducted from the
fund in the hands of the executor, upon which he was at
that time paying interest, and he is charged only with
running interest upon it, from the time it was thus due, till
25th June, 1839, when the Auditor's report came in. It
was, in other words, exempted from the operation of
rests. Upon the statement before us, he is, therefore,
charged for this debt, or, which is the same thing, for that
much of the capital in his hands on the 6th November,
1824, including interest to 25th June, 1839, with $2693.
On the 14th November, 1829, it appears the executor col-
lected, on this claim, $201 37, which, with interest there-
on till the Auditor reported, amounts to $317. The res-
idue of this debt he transferred in payment to the Griders,
on the 13th July, 1837, for which he obtained a credit, at
that time, for $2521. These sums, with interest upon
the latter from the time the executor obtained credit for

it, exceed the amount, on the 25th June, 1839, of what MOORE'S EX'OR. *vs* BEAUCHAMP, &c. is charged for the claim, upwards of $400, and the result is, consequently, to that amount to the prejudice of the legatees. Other debts due the executor, in his payments to the legatees, were used with similar advantage on the one side and prejudice to the other. The instances which we have examined and stated, do obvious and palpable injustice to the legatees, and that far we are of opinion the account stated should be corrected.

The amount found in the hands of the executor on the 25th June, 1839, by this account, was $19,915 75. To this sum add, for the errors indicated, something less than the amount $536, and we find in his hands $20,451 75, leaving, after deducting $1100, being the allowance to the executor, and $100 which he was directed to pay the Auditor, $19,351 75, for distribution. This sum, however, is exclusive of the advancements made by the executor, under the provisions of the will, to some of the legatees.

The will directs an equal distribution among the children of the testator's two daughters, Mrs. Grider and Mrs. Beauchamp, when they should have had their last children. The will also authorizes the executor, in the event any of the children should marry before a division takes place, to pay over to such child so much money as the executor may suppose will not exceed the proportion of said child at the time of said division.

Two of the daughters of Mrs. Grider were married as early as 1823 and 1824, and advancements made or money loaned to each, to the amount of $1500. On the 13th July, 1837, the executor paid over to other children of Mrs. Grider, or their guardians, $8003 06, and on the 27th June, 1838, he paid to two of the Beauchamps, legatees, $2145.

In ascertaining the distributive share of the complainants, the question arises, how these advancements and payments are to be treated. As the will directs an equal distribution, we are of opinion they should be treated as loans, and the executor charged with interest, and of course, in a settlement between the executor and the legatees, to whom advancements or payments had been

made, the executor would, in like manner, be entitled to interest upon such advancements or payments.    As all the legatees might not be in being at the time the early advancements were made, it would not, at that time, be practicable to set apart an equal amount for each; and even if it were, the result · would be the same, provided the executor and advanced legatees were made responsible for interest, by the same rule of computation applicable to the residue of the fund in the hands of the executor. · But as it was impracticable when the first advancement was made, to allot to each legatee a similar amount, the question occurs, how should the interest be calculated upon the advancements, by rests or current interest.    As the money thus paid or advanced to the legatees was under the express authority of the will, and not designed to be kept at interest by the recipient, with a view to its being refunded, we are of opinion the executor, in effect, the advanced legatees, should be charged only with current interest.    Upon this principle the advancements and payments, as before stated, including interest, amounted, on the 25th June, 1839, to $17,011, which when added to the sum, which, as we have before seen, was in the hands of the executor at the same time, makes the aggregate of the whole fund $36,361 81.    This sum gives to each of the twelve legatees a fraction over $3030, which exceeds the sum found by the Court below.

But it is urged on behalf of the executor, that he should not have been made responsible for interest after the institution of complainants' suit.    In that respect, we think he had no cause of complaint; if he had collected the debts due him as executor, and brought it into Court, or shown that he was ready to pay it over, his claim to exemption might be entitled to consideration: but he has not done this—nor does it appear that any portion of the fund due him as executor had ceased to be productive.

The Court decreed him a credit, as against the complainants, for a claim upon their father.    What other claims still remained in his hands does not appear.    The executor states in his answer, that he will exhibit a statement of all the uncollected debts, but none is found in

*An executor who is sued for distribution, may properly be made responsible for interest on the fund found in his hands for distribution, even after suit brought, unless he bring the money into Court when he answers, or especially where he does not show a readiness to pay when sued, and that the fund has ceased to be productive.*

the record. It was not, we think, unjust or erroneous to decree that the balance due the unsatisfied legatees should be paid in money.

It is further suggested as error, that the proper parties were not before the Court: but the suggestion is general, and we have not discovered that any additional parties were necessary to enable the Court to grant full and appropriate relief to the complainants.

That the report of the Auditor was defective and to the prejudice of the executor, we are satisfied: but if it appear, from all the facts in the case, that the final decree was right, as to the amount to which the complainants were entitled, we think this Court ought not to reverse it, that the case might again be sent to an Auditor, especially as it is no where suggested that the Auditor did not report all the facts of the case.

We are satisfied, after a careful and laborous investigation of the case, that $3000 did not exceed the amount of the share of each legatee, and we should be prepared to affirm the decree, but for the seeming injustice which it does the executor in regard to his claim upon P. R. Beauchamp, and which had been enjoined by the complainants.

There were six of the Beauchamp stock of legatees, all of whom were originally complainants. But some time before the final decree, the suit as to one of them, R. C. Beauchamp, was dismissed, the executor, as stated in the order, having settled with him. The decree perpetuate the injunction and allots the debt to the complainants as so much of their respective shares as legatees, and then proceeds to deduct one *sixth* part from the share of each. So far as appears from the record, a fifth instead of a sixth should have been deducted, which would have reduced the amount to $2632 37, instead as decreed of $2693 64. The share of Margaret E. Beauchamp should have been further reduced by $1072 50, paid to her guardian on the 27th June, 1838, with interest to 25th June, 1839, which would leave a balance due her of $1495 52. The Court gave interest from the coming in of the Auditor's report, and in so doing, we think, there was no

*Margin notes:*

MOORE'S EX'OR.
*vs*
BEAUCHAMP, &c.

It is not necessary for the court to send back a case to an Auditor, where all the facts are reported, and the court can, from the facts, do justice between the parties.

Interest against an ex'or may properly be given

Moore's Ex'or.
*vs*
Beauchamp, &c.
from the coming
in of the Au-
ditor's report as-
certaining the
balance against
him.

abuse of that discretion which a Chancellor may exercise in cases of this kind. The executor had had a rest from November, 1831, to June, 1839, nearly eight years; and in view of the whole case, we are of opinion that neither the executor nor his representatives have any cause to complain upon the subject of interest.

It is, therefore, the opinion of the Court, that so much of the decree herein be reversed as relates to the application of the debt of the executor upon P. R. Beauchamp, to the partial discharge of the respective shares of the complainants as legatees, 'and also so much of the decree as relates to the final balance accrued to each of the complainants, and the cause remanded with directions so to amend said decree as to allot to the five remaining complainants, to-wit: To Isaac H. Beauchamp, Richard N. Beauchamp, Joshua Beauchamp, Sarah Ann Beauchamp, and Margaret E. Beauchamp, the whole amount of the debt of the executor against P. R. Beauchamp, and which had been enjoined in this case, and to perpetuate the injunction, and that their respectively ascertained shares of $3000 each be reduced by one fifth of said P. R. Beauchamp's debt, viz: by $367 64, and to decree to said Isaac H., Richard N., Joshua and Sarah Ann Beauchamp, each, $2632 37, with interest from the 25th June, 1839, till paid, being the residue of their respective shares of $3000 each, as due at that date, after deducting from each one fifth of the debt aforesaid, and to decree to the said Margaret E. Beauchamp, $1495 52, with interest from 25th June, 1839, till paid, that being the balance due her after deducting from her share, as legatee, one-fifth of said debt upon P. R. Beauchamp, and also $1072 50, paid her guardian by the executor, with interest thereon from 27th June, 1838, till 25th June, 1839. And as the executor, Johnson, has died since this cause has been in this Court, and it has been revived in the name of his executors, John N. and Jedediah Johnson, it will stand revived in the Court below.

It being suggested that payments have been made to complainants on account of their claims, since the final decree was rendered, it is understood that any such pay-

ments will operate as credits upon the decree herein directed to be entered.

Decree reversed and cause remanded.

*Owsley & Goodloe, Pirtle and Loughborough* for plaintiff: *Morehead & Reed* for defendants.