## Clemens *vs* Caldwell.

ERROR TO THE MERCER CIRCUIT.

*Trusts and trustees. Administrator. Interest. Jurisdiction.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case* 45.

*October* 19.

Case stated.

THOMAS CLEMENS, by his last will, which was admitted to record in the Mercer County Court, in 1826, devised one third of his estate to the children of his sister, Elizabeth Caldwell, then the wife of Charles Caldwell, and directed that it should be converted by the trustee therein named, into cash and vested in good United States government stock, and the interest arising therefrom to be also invested in the like stock, until the children of said Elizabeth should attain the age of twenty one years, when the whole amount, principal and interest, was to be equally divided between them; but he adds: "in case the said Elizabeth shall die without *heirs*, then this one third part of my estate, which I now give to her children, shall descend to any other lawful heirs." The will in conclusion contains this clause: "I do hereby appoint my uncle, James Clemens, of Huntsville, Alabama, and his successor or successors, as trustee or trustees, for the execution of this will."

James Clemens, the trustee named in the will, having renounced his right and refused to qualify as executor, James Clemens, Jr., was appointed administrator with the will annexed, and as such, executed bond, with James Clemens, Sr. and Isabella Clemens his sureties.

In 1837, Jeremiah Clemens Caldwell, by his father and next friend, exhibited this bill in the Mercer Circuit Court, alledging that he was the only child of Elizabeth Caldwell, and as such, under the will of Thomas Clemens, was entitled to one third of his estate. That James Clemens, Sr., had not accepted the trust for the manage-

ment of the complainant's interest, and was not disposed so to do, and James Clemens, Jr., resided in St. Louis, Missouri; that he had rendered no account of the estate to which the complainant was entitled, which had come to his hands; nor how it had been invested or used; that complainant resided with his father in the county of Mercer, and that it would be for his interest to have some other person appointed a trustee for the management of the fund pursuant to the directions of the will, and that an account should be rendered by the said James Clemens, Jr., of the estate of the testator, &c. The said James Clemens, Sr. and the said James, Jr,. and Thomas Reed and his wife, Isabella, late Isabella Clemens, were made defendants.

Interlocutory decree of the Circuit Court.

In March, 1838, the Court appointed Charles Caldwell, the father of the complainant, trustee, requiring him to execute bond with surety, in the penalty of twenty thousand dollars, conditioned that he should "faithfully collect, dispose of, and account for the estate of the complainant, so far as it might come to his hands, under such orders, directions and instructions as may hereafter be made upon him by the Mercer Circuit Court, in this cause." As to the residue of the cause, the Court retained it for further proceedings and decree.

First answer of James Clemens, Jr.

In 1840, James Clemens, Jr. filed his answer, admitting that the complainant was entitled to a portion of the estate of Thomas Clemens, in his hands, as claimed, and he expresses a willingness to settle it up. His answer, however, is very indefinite and unsatisfactory as to its amount and condition. He admits he has made no settlement as administrator, and that he has not invested that portion of the estate to which complainant is entitled.

Amended bill.

Subsequently amended bills were filed, alledging more specifically, the amount of the testator's estate, which had been converted into money by the administrator, and charging him with having used it, and profitably, for himself, in the very extensive and valuable business in which he was engaged.

Second answer of J. Clemens, Jr.

In 1843, the defendant further answers, and for the first time questions the jurisdiction of the Court and the

right of complainant to maintain his action. His answer is still evasive and unsatisfactory as to the amount and condition of the fund in question.

CLEMENS
vs
CALDWELL.

A subsequent amended or supplemental bill was filed by complainant, alledging that his father, Charles Caldwell, who had been appointed trustee, had accepted the trust and executed bond as required by the decree. He further alledges the continued and profitable use, in his own business, by the defendant, the administrator, of the estate of the testator, or the portion to which the complainant was entitled, and that he still failed to render any account thereof; and by specific allegation and interrogatory, he calls upon him for further answer.

Second amended bill.

The defendant in his answer states that the estate of the testator amounted to twenty two thousand and fifty four dollars 68 cents. He admits that he had on hand of this sum, in cash, as early as the 1st January, 1828, twelve thousand four hundred and six dollars 15 cents; and that in 1839, he received between two and three thousand more. As to the residue of the estate, the answer is still not satisfactory. He again admits that complainant is entitled to one third of said estate. He does not deny the repeated allegation as to the profitable use of the fund in his own business. What or how great profits he has made, he does not attempt to explain.

Third answer of J. Clemens, Jr.

The cause was heard in part, and the Court recognising and confirming the appointment of Charles Caldwell as trustee, decreed that the defendant, the administrator and his sureties, pay to the said trustee, one third of the $12,406 15, on hand the 1st January, 1828, with compound interest at the rate of six per cent. per annum, up to the rendition of the decree, amounting to $11,509 38, and that the trustee might have execution therefor, &c. And as to the residue of the cause, it was retained, and an auditor appointed to settle the account of the administrator, &c.

Decree of the Circuit Court.

To reverse that decree, James Clemens, Jr. prosecutes this writ of error.

The questions raised by the assignment of errors are, first, that the Court below had no jurisdiction.

CLEMENS
*vs*
CALDWELL.

An administrator
with the will an-
nexed, becomes
a trustee in the
place of an ex-
ecutor refusing
to qualify, and
is responsible as
such, and amen-
able to the juris-
diction of the
Chancellor who
may remove him
as trustee of a
a devise, and ap-
point another.

This objection, we think, is untenable. Whether Jas. Clemens, Jr. is regarded as occupying the attitude in regard to the fund in question, of a trustee under the will, for the investment and management thereof as therein directed, as contended by his counsel, or whether he should be regarded merely as an administrator, and that the duty of investing and managing the complainant's portion of the estate did not devolve upon him, in either case, we think the jurisdiction of the Court was unquestionable. If he was not trustee, upon the failure of the one appointed, it was proper, and was the peculiar province of the Chancellor to appoint another, and place the trust funds in his hands. If on the other hand, the trust devolved upon the defendant, as administrator with the will annexed, as we think it did, and as insisted by his counsel, it was the province of the Chancellor, upon the application of the complainant, to require him to show and exhibit the amount and condition of the trust fund, and upon his failure to execute the trust, as required by the will, or from the insecurity of the fund in his hands, or other sufficient cause, to appoint another person trustee. In the appointment of the father of the complainant trustee, in this case, it seems to us that there was no abuse of discretion by the Chancellor.

The failure of a
trustee to invest
the fund as di-
rected, and the
use thereof in
his own bu-
siness, is good
ground for his
removal by the
Chancellor.

The failure of the defendant to invest the fund, as required by the will, his utter neglect in rendering an account of his trusteeship, his abuse of the trust in using the fund in his own business, and his evasive and unsatisfactory answers when called to account for it, and the way he had managed it, fully justified the Court in substituting another trustee, to which the defendant made no objection in the Court below, but recognised the appointment as made. Nor does it appear that the appointment was not in all respects proper and judicious.

The effect of the
removal of one
trustee and the
appointment of
another, is not
to change the
purposes of the
trust, but for its
security to the
*cestui que trust,*

The effect of appointing a trustee, and placing the trust fund in his hands, was not, as contended by counsel, to confer upon the complainant any additional right to it. It would be held by the trustee as held by the administrator, subject to the provision in the will. Whether Elizabeth Caldwell is still living or not, does not appear. If she is not, the fund is vested absolutely in the complain-

ant. If she is still living, his right to it, or to any portion of it, may depend upon his surviving her. The Chancellor in this view of the case, very properly retains in the decree, entire control over the fund, and to render such control efficient, has required from the trustee a bond conditioned accordingly. The objection, therefore, to the jurisdiction, and to the appointment of a trustee, is not deemed available.

CLEMENS
*vs*
CALDWELL.

and it is still within the power of the Chancellor.

It is further objected, that the appointment of the trustee in 1838, was a final disposition of the case. We think not. *That* was only one of the objects sought to be obtained by the bill, and the Chancellor might well proceed to compel the administrator to settle up the estate, and place the trust fund in the hands of the trustee. Nor under the circumstances of this case, was it erroneous to direct the admitted liquidated portion of the fund to be paid over before the whole estate was finally settled, and more especially as the record contains manifest indications of a disposition on the part of the administrator to delay the final settlement of the matter.

The removal of one trustee, and the appointment of another on bill filed for that purpose, is not a final disposition of the case. The Chancellor may retain the case, and compel an account with the newly appointed trustee of the trust fund.

But again, it is insisted that it was erroneous to charge the administrator with interest annually compounded, and that in any view of the case, the decree is for too much.

In the consideration of this question it may be assumed that the duty of executing the will in regard to the devise to the children of Mrs. Caldwell, devolved upon the administrator with the will annexed, and in reference to that devise, that he occupied the attitude of a trustee under the will. The will directs one third of the testator's estate to be converted into cash as soon after his decease as the trustee shall think most fit, and to be invested in good United States government stock, and the interest arising therefrom to be invested in like stock. It was manifestly, therefore, the intention of the testator that this trust fund, as well the accruing interest as the principal, should be made productive; and if found impracticable to invest it in the specific stock, as directed by the will, it was the duty of the trustee, we apprehend, otherwise to have invested it, so as to have effected the intention of the testator, as far as practicable, in refer-

A trustee who fails to invest a trust fund in stock, with the interest also, as directed, but employs it in his own business, is responsible for interest upon the annually accruing interest, if an investment was practicable directed, if not, then for such interest as it would have produced in the hands of a man of ordinary prudence.

CLEMENS
vs
CALDWELL.

ence to its accumulation. If the fund could have been invested as directed by the testator, and the trustee had failed to make the investment without showing sufficient reason for such failure, the rule is well settled that he should be held responsible for such accumulations as would have resulted from a specific investment as directed: *Levin on Trusts and Trustees,* (*Law Library,* 329 to 332; 2 *Story's Equity,* 642.)

Whether it was practicable in this case to have invested the fund according to the testator's injunction, does not appear. The trustee offers no excuse for having failed so to invest it. He renders no account as to the accumulations of it, but admits, by failing to respond to the explicit and repeated allegations in the complainants bills, that he has used it for his own benefit, and profitably, in the very extensive and lucrative business in which he had been engaged. How profitable he has rendered the fund thus employed by him, he has not condescended to explain. He does not intimate that there was any difficulty or hazard in loaning or investing the fund, so as to secure an annual return of six per cent. He suggests no misfortune nor loss in his business, nor any circumstance, nor is there any thing in the record which commends him, in settling the question of interest, to the indulgent consideration of the Chancellor. On the contrary we think he should be held to a strict accountability.

Even if it were conceded that the fund could not have been invested as directed by the will, still we can hardly doubt that it would have been the duty of the defendant to have loaned it, as a man of ordinary prudence would have done, so as to realize an annual return of the interest. If he has failed so to loan it, and offers no excuse for not so doing, but has used it, as he virtually admits, profitably in his own business, he is to be considered as having loaned it to himself upon the same terms, upon which it may be fairly inferred it could have been loaned to others.

There is no uniform rule for fixing the rests and calculating interest against

There is no fixed rule as to what would be a reasonable period for compounding the interest upon funds in the hands of executors and other fiduciaries, in view of their accountability, and which it was their duty to invest or

loan, and render productive by the accumulation of interest. The length of the *rest* would depend upon the particular facts and circumstances of the case. In *Moore's executor vs Beauchamp*, (5 *Dana,* 71,) and where the subject is very fully examined and the authorities cited, this Court fixed the two first rests at three years each, and after that at two years. But that case differed from the one before us in several important particulars. There were circumstances which entitled the executor, in that case, to the favorable consideration of the Chancellor in designating the rests, but none are perceived in this. Finally we are of opinion that the Court below was right in subjecting the administrator to annual compound of the interest.

CLEMENS
vs
CALDWELL.

executors and other fiduciaries. The right of rests should depend upon the facts and circumstances of each case.

There is another objection not expressly raised by the assignment of errors, but relied upon in argument, which it remains to notice. It is objected that no refunding bond was required from the complainant or trustee, before he was authorized to enforce the decree against the defendants. We are not satisfied that this objection would have been available, even if it had been expressly assigned for error. When the case was heard nearly twenty years had elapsed since the probate of the will. The bill alledges that the testator was not in debt at his death, and there is no intimation, from any quarter, that such was the fact. Besides, there was still left in the hands of the administrator, as admitted in his answer, of this trust fund, without reference to interest, between three and four thousand dollars. Under such circumstances, we think, the failure to require a refunding bond can in no view of the case, be regarded as an error to the prejudice of the administrator.

The presumption is strong, after a lapse of twenty years, that the debts against a decedent's estate have been all paid.—*Argu.*

Wherefore, the decree is affirmed.

*Morehead & Reed and Harlan & Craddock* for plaintiff; *Woolley* for defendants.