OF

# THE SUPREME COURT

OF THE

# STATE OF ILLINOIS,

## NOVEMBER TERM, 1852, AT MOUNT VERNON

STEPHEN R. ROWAN, Plaintiff in Error, *v.* ALEXANDER KIRKPATRICK et al., Defendants in Error.

### ERROR TO GALLATIN.

It is erroneous to strike a demurrer to an amended bill from the files, but where the litigation has been protracted and the Supreme Court is advised that the demurrer would have been unavailing, a cause will not be remanded for such error.

The withdrawal of answers, or the filing of others, is a matter left to the discretion of the chancellor, and unless he has abused his discretion this court will not interfere.

An administrator *de bonis non* has no authority to call on the first administrator, or in case of his decease, on his personal representative, for an account of assets already administered upon. He can only administer upon so much of the estate as remained unadministered upon.

The distributee or creditor of the first intestate should prosecute the representatives of the first administrator, for any waste or misapplication of assets.

Claims against the estate of a decedent (unless the claimants come within some saving clause of the statute), should be presented within two years from the granting of administration, or they will be barred from receiving any share of the estate previously inventoried or accounted for.

An administrator is chargeable with interest, whenever he receives it, uses the money, or unreasonably retains it.

A guardian, who converts money of his ward to his own use, is chargeable with compound interest.

Administrators who have acted in good faith in the collection of debts due their intestates, exercising proper vigilance, directed by a reasonable judgment, ought not to be charged with debts they may have failed to collect.

THIS cause was decided at February term, 1852, of the Circuit Court of Gallatin County. S. S. MARSHALL, Judge. The facts of the case will be found in the opinion.

W. B. SCATES, R. F. WINGATE, N. L. FREEMAN, and J. OLNEY, for plaintiff in error.

S. D. MARSHALL, H. B. MONTGOMERY, and D. BAUGH, for defendants in error.

TRUMBULL, J. This was a bill for an account, filed by the legal representatives of James Reid, deceased, against Rowan, administrator of Alexander Reid, and administrator *de bonis non* of said James.

The bill charges in substance, that James Reid, in 1831, departed this life intestate, leaving Eliza Jane, his widow, since intermarried with Alexander Kirkpatrick, and Rebecca Reid, who was at the time of filing the bill a minor, and sued by her guardian, but who, as appears from a suggestion of record, has since intermarried with Joseph Bowles, his only heir at law; that the said James, at the time of his death, was possessed of personal estate amounting to about seven thousand dollars; that Alexander Reid took out letters of administration on the estate of James and was also appointed guardian of the said Rebecca, and by virtue of these letters possessed himself of the whole estate of the intestate; that in the course of his administration he converted large amounts of goods and chattels into money, and collected large amounts of money due the estate, much more than was necessary to pay the debts of the intestate, as well as rents and profits of the real estate; that the complainants frequently applied to the said Alexander to make a settlement of said estate and pay them their respective shares of the same, but that he departed this life on the       day of 1841, without having made a final settlement or paid the complainants their respective shares; that Rowan obtained letters of administration on the estate of said Alexander Reid, deceased, and by virtue thereof became administrator *de bonis non* of the said James Reid, deceased, and possessed of the effects which were of James Reid in the hands of said Alexander; that they had

applied to the said Rowan to make a settlement and distribution of the estate of the said James, which he had refused to do; — charges that the said Alexander in his lifetime used for his own purposes large sums of money belonging to the estate of the said James; that at the time of the death of the said Alexander there was a large balance in money remaining chargeable to him as such administrator, and distributable to complainants; that by the carelessness and neglect of the said Alexander in his lifetime, and of the said Rowan since his decease, a large number of debts due the estate of the said James had been lost; that Rowan, before he became administrator *de bonis non*, came into possession of money and effects of James Reid, and has never accounted for the same; that by his refusal to account the said Rowan has imposed a grievous hardship on complainants, and should pay interest; and prays that he may answer and set forth particularly a full, true, and just account of all and singular the goods and chattels, rights, credits, and effects of which the said James was possessed at the time of his death, and which came to the hands of the said Alexander or of the said Rowan, and how the same had been disposed of; also of the moneys received and paid out, and of the rents and profits of the real estate of the said James, deceased, and of the administration by said Alexander and said Rowan; that an account be taken and a distribution made to the complainants of their respective shares to be paid out of the estate of the said Alexander and the said Rowan, as they are respectively chargeable, and for general relief.

At the June term, 1844, a demurrer to the bill was filed, which the court overruled. In November following, the defendant Rowan filed his first answer. The case was continued from 1844, without any steps being taken material now to be noticed, till the summer of 1850, when Rowan filed a second answer. At the November term following, the complainants asked and obtained leave to amend their bill, which was done, by striking out all those parts of the original bill making the heirs of Alexander Reid parties, and praying to subject the lands of which he died seized to the payment of the decree sought to be obtained; and a rule was entered against the defendant, Rowan, to answer in twenty days. Rowan then filed a demurrer to the amended bill, and at the September term, 1851, asked leave to withdraw his previous answers. The court refused the leave, and, on motion of the complainants, struck the demurrer from the files, and again ruled the defendant to answer the amended bill by the Monday

morning following. Rowan thereupon filed his third answer, which is the only one it is important to notice. In this answer, Rowan admits that he is administrator of Alexander Reid, deceased, who was administrator of the said James, and guardian of the said Rebecca, his heir at law, and that he is administrator *de bonis non* of the said James, by reason of administering on the estate of Alexander; that he knows nothing of the condition of James's estate, further than appears from the books of the probate office of Gallatin county, and the books and papers of the said James and Alexander, which have come to his hands as administrator; that said Alexander returned to the probate office, an inventory of notes and accounts due said James, amounting to $5,163.22, also inventory of goods and chattels, $882.73, to which add $34.97, excess of sale bill over appraisement bill, making a total, as shown by the files of the probate office chargeable to the said Alexander, as administrator of James, of $6,080.92; that there are also among the papers of the said Alexander notes made payable to one John Reid and the said James, which were listed in a small book by the said Alexander, but not inventoried; that he also finds among the papers of the said Alexander, deceased, notes and accounts, due said James's estate, uncollected to the amount of $2,766.36, and vouchers filed and allowed in the probate office to the amount of $1,845.28, which two last sums, with $87.71, to which the said Alexander appears by the books to be entitled to a credit, and the further sum of $12.35 for commissioners, never allowed, make the sum of $1,711.70, as credits to be taken from the said sum of $6,080.92, leaving a balance against the estate of the said Alexander of $1,369.22, (erroneously stated in the answer as $1,269.22 by an error in computation,) to which should be added $205.93, admitted to have been collected, but not reported, thus making a total balance against the estate of the said Alexander, deceased, of $1,574.15; admits that said Alexander, as guardian of said Rebecca, received $383.62, and paid over thereof $32.70, thus leaving Alexander's estate at the time of his death, indebted to said Rebecca $350.92, as guardian, exclusive of interest, should interest be allowed; alleges that $156.75, one third of the whole amount of rent collected by defendant's intestate, was paid over to Eliza Jane Kirkpatrick, the widow of said James, deceased; that the defendant, as administrator of the estate of the said Alexander, has paid to the said Eliza Jane $18.75, also to her, as natural guardian of the said Rebecca, $24.00, and to said Alexander Kirkpatrick, as guardian of Rebecca, $171.57, and to Rebecca herself $50, thus making $274.32

Rowan *v.* Kirkpatrick et al.

paid by the defendant, on account of the amount stated to be due the estate of said James from the estate of said Alexander, deceased, and has also paid the further sum of $22, for repairing house; denies that any money or property ever came to his, defendant's, hands, belonging to the estate of the said James, deceased, either before or since he became administrator *de bonis non* thereof, not included in the sums before charged against the estate of said Alexander; alleges that he has been informed and believes that large sums of money were collected by the said James, shortly before his decease, which never came to the hands of his administrator, the said Alexander, but were used by the said Eliza Jane, and that the said James, shortly before his decease, also collected some of the accounts which were subsequently returned by the said Alexander as due and uncollected, and that it is possible that some of the money reported as collected and charged to the said Alexander may be found to be a part of the sale bill, and if so, that the same is twice charged; alleges that the said Alexander departed this life in October, 1841; that administration was granted to the defendant on his estate the same year; that the bill of complainants was not filed till January, 1844, being more than two years after the granting of letters as aforesaid, and submits whether the supposed claims of the complainants are not for ever barred, not having been exhibited within the time required by law; and denies all manner of unlawful actings and doings in said complainant's bill charged against him or his said intestate, Alexander Reid, deceased.

To this answer the complainants, at the same term, filed a replication, and the cause was set for hearing at the next term, with leave in the mean time to take depositions.

At the February term, 1852, the defendant applied for leave to file an amended answer, which was denied, and the cause heard on bill, answers, replication, and proofs, and the case taken under advisement.

Before proceeding further with the statement of the case, it may be well to dispose of some objections taken to the proceedings previous to the entry of the final decree. The striking of the defendant's demurrer from the files was clearly improper. After the amendment of the bill by striking out parties and a subject-matter which, when in, the court had previously decided were not grounds of demurrer, it was the party's right to have the sufficiency of the bill passed upon when they were subsequently stricken out, and the complainants had taken a new rule upon him to answer. But this error of the court cannot have injured the defendant, as we are

clearly satisfied that the bill as amended was not obnoxious to a demurrer, and the striking of the demurrer from the files, although an improper practice, amounted to the same thing as would an order overruling it. After this long protracted litigation, and after the parties have had a full hearing upon the merits, it would be trifling with their rights to send the case back to be gone through with again, simply because the circuit court improperly struck a demurrer to an amended bill from the files, instead of having heard and overruled it. In the refusal to allow the defendant to withdraw his two first answers, which seem very properly, under the circumstances of this case, not to have been considered by the court in making up its decree, or to permit a fourth answer to be filed, there was no error. Such motions, as a general rule, are addressed to the discretion of the chancellor at the time; and unless it clearly appears, which it does not in this case, that there has been an abuse of this discretion whereby injustice may have intervened, this court will not revise the action of the chan-·cellor in such matters.

The following is the decree finally entered by the circuit court, as of the term when the cause was heard: " This cause coming on now to be heard upon bill, answer, exhibits, and proofs of witnesses sworn in open court, and the court finds from the evidence in the cause that the said Alexander Reid as administrator of the estate of James Reid, deceased, actually collected upon debts due said James Reid, at the time of his death, the sum of $2,414.81. That he is chargeable in addition thereto with the amount of the sale bill returned by him to the probate court, which is $917.70; that he also collected in rents on the real estate of James Reid, deceased, the sum of $470.20, making total of moneys belonging to the estate of James Reid, deceased, actually shown to have been collected by said Alexander $3,802.76, out of which the probate court allowed the said Alexander, administrator as aforesaid, credits which are now sanctioned and allowed by this court, amounting in all to the sum of $1,942.03. In addition to which this court now makes an additional allowance upon evidence presented to the court here of $339.47, making total of credits $2,281.10; which, deducted from the moneys collected as aforesaid, leaves a balance of $1,521.66. And the court finds from the evidence, that said moneys were converted by said Alexander Reid to his own use, and mixed up with his own estate; and after allowing said administrator three years from the date of his letters of administration, in which to have made his settlement of said estate, and in addition thereto one year and

Rowan v. Kirkpatrick et al.

five months' gratuitous use of said moneys, in lieu of his com-
missions for collecting, etc., the court allows interest on said
sum of $1,521.66, against the estate of said Alexander Reid,
for the residue of the time up to the hearing of this cause,
being sixteen years and seven months, at the rate of six per
cent. per annum, compound interest, allowing annual rests,
which upon such basis makes in all now due from the said
estate of Alexander Reid, deceased, to the complainants on
moneys actually collected of the estate of James Reid, deceased,
but never paid or accounted for by said Alexander or his repre-
sentative, $4,000.84.   In addition to which last-named sum,
the court finds from the evidence that of the debts reported by
Alexander Reid to the probate court of Gallatin county, as
due to James Reid at the time of his death, there was actually
collected but not shown to have been collected and which is
not allowed in the foregoing computation, the sum of $976.60,
with which the estate of Alexander Reid is chargeable; making
in all $4,977.44, now due from the estate of Alexander Reid to
the said complainants.   Out of which last-named sum the
court also finds from the evidence, after considering the amounts
heretofore paid to each of them, as shown by the evidence in
this cause, that the said Eliza Jane Kirkpatrick, as widow of
the said James Reid, deceased, is now entitled to receive the
sum of $652.72; and that the said Rebecca Bowles, as dis-
tributee and sole heir of the said James Reid, deceased, is now
entitled to receive the sum of $4,324.72. It is therefore ordered,
adjudged, and decreed by the court here, that the said Stephen
R. Rowan, administrator of the estate of Alexander Reid, de-
ceased, out of the assets of said estate now in or hereafter to
come into his hands, pay unto the said Alexander Kirkpatrick,
and Eliza Jane Kirkpatrick his wife, the said sum of six hun-
dred and fifty-two dollars and seventy-two cents; and unto the
said Joseph Bowles, and Rebecca Bowles his wife, the said sum
of four thousand three hundred and twenty-four dollars and
seventy-two cents, together with the costs of this suit, by the
clerk to be taxed."

In order to a proper understanding of the merits of this case
and the questions involved, it is important that a clear idea be
first obtained of the twofold character of the defendant as
administrator of Alexander Reid, and as administrator de bonis
non of James Reid.   It was insisted, on the argument, that it
was the duty of Rowan, as administrator de bonis non of James,
to collect from the estate of Alexander all claims which the
heirs of James might have upon it; and that the heirs could
not maintain a suit against the administrator of Alexander

Reid, for assets converted by him in the administration of their ancestor's estate. Directly the reverse is the law. The heirs or distributees can, and the administrator *de bonis non* cannot, maintain such a suit. An administrator *de bonis non* has no authority to call on the first administrator, or in case of his decease, on his personal representative, for an account of assets already administered upon. His commission only authorizes him to administer upon so much of the estate as was unadministered upon by the former administrator. Whatever goods and chattels of the first estate, remain in specie, or can be traced and distinguished from the estate of the first administrator, the administrator *de bonis non* has the right to recover; but he has no right, as a general principle, to call the representative of the deceased administrator to account for any part of the estate sold, converted, or wasted by him. When an administrator converts the goods of his intestate to his own use, it is an administration of such goods, and being an administration, is consequently without the commission of an administrator *de bonis non.* The established practice, therefore, is, for the distributee or creditor of the first intestate, and not the administrator *de bonis non* to prosecute the representatives of the first administrator for any waste or misapplication of the assets of that administration. Warwick *v.* M'Merdo, 5 Randolph, 51 ; Cheatham *v.* Friend, 9 Leigh, 580 ; Smith *v.* Carrese, 1 Richardson's Eq. Rep. 123 ; Oldham *v.* Collins, 4 Bibb, 49 ; Felts *v.* Brown, 7 Bibb, 147 ; Young *v.* Kimball, 8 Blackf. 167.

The main object of this proceeding was to recover from Rowan, as administrator of Alexander Reid, the assets converted by said Alexander in his administration of James's estate ; and not to recover against Rowan for a *devastavit* committed by him as administrator *de bonis non.* It is true, the bill charges generally that Rowan as administrator *de bonis non* became possessed of the rights, credits, moneys, and effects which were of James Reid, in the hands of Alexander Reid, at the time of his death, and that by his negligence and carelessness a large number of debts due the estate of said James Reid have been lost; but the record contains no proof to sustain this last allegation, and the decree is wholly against Rowan as administrator of Alexander Reid, and not against him individually, or as administrator *de bonis non* of James Reid.

In order to do complete justice between all the parties, it was held in Holland *v.* Prior, 1 Mylne & Keene, 237, that the administrator *de bonis non* was a proper and a necessary party to a bill against the representative of a deceased executor, and especially would this be the case, where, as under our statute,

Rowan *v.* Kirkpatrick et al.

the person appointed administrator of an administrator, is required to enter into bond and close up the unsettled estate, under all the liabilities and with all the privileges of an administrator *de bonis non.*

The estate of Alexander Reid cannot certainly be charged with a *devastavit,* committed by Rowan, as administrator *de bonis non* of James Reid's estate; but Rowan must answer out of his own estate for his own torts, if any he has committed, in the same manner as the estate of Alexander Reid is made to answer for those committed by him.

It appears from the answer of Rowan, and the evidence in the case, that more than two years intervened between the time of granting letters of administration on Alexander Reid's estate and the filing of this bill; and it is insisted, that by reason of this lapse of time, the claims of the complainants against the estate of Alexander Reid are for ever barred by the 115th section of the statute of wills. That section divides claims into four classes, and declares that " where any executor, administrator, or guardian, has received money as such, his executor or administrator shall pay out of his estate the amounts thus received and not accounted for, which shall compose the third class; " and then, after declaring what shall constitute the fourth class, it goes on to provide, that all demands not exhibited within two years from the granting of letters of administration, " shall be for ever barred, unless such creditor shall find other estate of the deceased not inventoried or accounted for by the executor or administrator, in which case his claim shall be paid *pro rata* out of such subsequently discovered estate ; saving, however, to *femes covert,* infants, persons of unsound mind, or imprisoned, or beyond the seas, the term of two years after their respective disabilities be removed, to exhibit their claims." This statute received a construction in the case of Thorn *v.* Watson, 5 Gilm. 26, which was reaffirmed in the cases of Judy *v.* Kelly, and The People *v.* White, 11 Ill. 216, 349. According to those decisions, the complainants, unless they come within some saving clause of the statute, are barred from receiving any share of the estate already inventoried or accounted for. The principle adopted in the construction of general laws of limitation, that as between *cestui que trust* and the trustee no lapse of time will preclude an account, cannot take this case out of the particular statute in question. Money received by the deceased as administrator or guardian, is made by the statute to constitute the third class of demands against his estate, and the same section of the law declares, that all demands, including of course those in the third as well as other classes, not exhibited within the two years, shall be barred.

It was as competent for the legislature to prescribe the time within which unpresented claims of a fiduciary character should be barred, as it was to limit the time within which any other class of claims must be presented; and when, as in this case, it has been expressly done, the courts are not at liberty to nullify the special statute, by applying to it a principle of interpretation which has sometimes obtained in the construction of general acts of limitation. The original bill was filed by Kirkpatrick and wife, and Rebecca Reid, by her guardian, the said Kirkpatrick. The record does not show when Rebecca became of age; but her capacity to sue in the character assumed not having been questioned, it must be taken as admitted, and that she was a minor at the time the suit was instituted. She is, therefore, clearly within the saving clause of the statute. The record does not show at what time the widow of James Reid was married to Kirkpatrick. If sole at the time letters of administration were granted on Alexander Reid's estate, the statute immediately commenced running against her. Once having commenced, it would continue to run, notwithstanding her subsequent coverture, and she would be barred of any recovery from the estate of Alexander Reid, except out of subsequently discovered estate. As this case will have to be remanded, proof can hereafter be taken to show what the real facts are, both as to the age of Rebecca, and the time of the intermarriage of Eliza Jane with Kirkpatrick.

The next important inquiry relates to the allowance of compound interest. In Williams on Executors, 1309, it is said, there are two grounds on which an executor or administrator may be charged with interest: "1st. That he has been guilty of negligence in omitting to lay out the money for the benefit of the estate. 2d. That he himself has made use of the money to his own profit and advantage, or has committed some other misfeasance." It clearly appears from the evidence, that Alexander Reid collected divers sums of money belonging to the estate of James Reid, which he mixed up with his own funds, used for his private benefit, and after a period of about ten years, died without having paid over or rendered to the complainants any account thereof. The principle is, that a trustee shall not make any advantage to himself out of the trust fund; and that all profits which he has, or might, or ought to have made, belong to the *cestui que trust.* As against an administrator, the general rule is to charge him with interest whenever he receives interest, uses the money, or retains it unreasonably after he ought to pay it over to claimants, or to account to the court. Alexander Reid was both administrator of James Reid and guardian of his infant child. As guardian, it was clearly

Rowan v. Kirkpatrick et al.

his duty to have taken the money coming to his ward, and have invested it for her benefit. Not having done so, but having converted it to his own use, the circuit court, for such a breach of trust, was clearly right in charging his estate with compound interest, so far as the amount coming to her was concerned. Schriffelin v. Stewart, 1 J. C. 620; Jennison v. Hapgood, 10 Pick. 78; Moore's Ex'r v. Beauchamp, 5 Dana, 77; and 1 American Leading Cases, 362, et sequitur, where the authorities on this subject are collected. There is not the same propriety in charging compound interest in favor of Mrs. Reid, now Mrs. Kirkpatrick. She was at the time an adult, and could not have compelled payment of the share coming to her without first tendering a refunding bond. There is a difference between the liability of a guardian and an administrator to pay interest. It is the duty of the former to invest or loan out the money of his ward so that it will accumulate, while the latter has no such duty to perform. Eliza Jane was in a position to have demanded and collected from the administrator the share coming to her; not having done so, or even requested payment, so far as the record shows, and there being no evidence that the administrator acted corruptly in neglecting to pay her the sum to which she was entitled, his estate ought not to be charged with more than simple interest on the amount, if any thing, which she may ultimately be entitled to recover against it. Even in favor of the minor the interest should not be compounded after the decease of Alexander Reid. From that time the claim for what he owed both as administrator and guardian became one against his estate, and his administrator could not be charged either with neglect or bad faith in omitting to pay it, till it had been exhibited against the estate as other demands. This was not done, so far as the record shows, till the filing of this bill. The proper rule for the computation of interest will be to charge the estate of Alexander Reid with compound interest on the amount shown to have been converted by him and belonging to his ward, from the time of such conversion down to the time of his decease, and simple interest on the total sum of principal and interest then due, from that period till the entry of the decree; and on the amount which shall be found due to the said Eliza Jane, simple interest should be charged for the whole period. The interest to be computed at the rate of six per cent. per annum.

In determining the time from which to commence the computation of interest the circuit court allowed three years for the settlement of the estate, and one year and five months gratuitous use of the money in addition in lieu of commissions.

This allowance was exceedingly liberal to the estate of Alexander Reid, and yet we are not prepared to say that it was unreasonably so, under the peculiar circumstances of this case. The case shows that James Reid was a physician, and that most of his estate consisted of open accounts, due him in that capacity. To close up such an estate, consisting of hundreds of small accounts amounting in the aggregate to more than $5,000, scattered over a large district of country, would necessarily take longer than to close up an ordinary estate.

The next important inquiry is the propriety of the charge of $976.60 against Alexander Reid's estate, on account of debts which, while administrator of James Reid, said Alexander failed to collect. This item is one of the main points in the case, and to it most of the evidence was directed. We have carefully examined the testimony, consisting chiefly of the opinions of witnesses as to the solvency of numerous debtors from ten to twenty years before, and cannot make the sum proved to have been collectable and which was not collected, so large as that allowed by the circuit court. All the uncollected claims are embraced in the lists of those enumerated in the inventory as doubtful or desperate, chiefly in the latter. The evidence shows that Alexander Reid sued upon many accounts, and obtained judgments upon which nothing could be made; and in the decree he is charged with having actually collected upon debts due the estate of James Reid at his death, $2,414.81, while the whole amount of debts of all classes reported in the inventory to be due was only $5,163.22. In addition to the fact that Alexander Reid collected nearly fifty per cent. of the whole amount of debts due to his intestate, and of the evidence that he prosecuted numerous other debtors to insolvency without being able to collect the amounts they severally owed, the record contains the uncontradicted testimony of several witnesses, all of whom concur in stating that Alexander Reid was a prudent, diligent man; a good business man, and a good collector. Under such circumstances, considering the character and nature of the claims he had to collect, and the collections he actually made, he ought not at this time to be charged with that negligence in the administration of his brother's estate, which would render his own liable for uncollected debts, except upon very clear evidence. *Primâ facie* his estate should not be held liable for any of the uncollected debts which were inventoried as desperate. Upon clear proof that any debt was lost through his carelessness or want of attention, his estate should undoubtedly be held responsible; but an administrator who has acted in good faith in the collection of the debts due

Rowan *v.* Kirkpatrick et al.

his intestate, and intended fully and fairly to discharge his duty in that respect, ought not, if his intentions have been directed by a reasonable judgment in the matter, to be charged with the loss of debts which he has failed to collect. While care must be taken to guard against an abuse of their trusts by administrators, courts ought not to hold them personally liable upon slight grounds, lest suitable persons be deterred from undertaking these offices. To charge the estate of Alexander Reid with any of the uncollected debts due James Reid's estate, under the circumstances of this particular case, it ought to be made satisfactorily to appear that the debtor had property liable to execution, that Alexander Reid must probably have known that fact, and still carelessly omitted to coerce payment. The circuit court was clearly right in not allowing interest on the uncollected debts. Alexander Reid having neither collected the money, nor had the use of it, nor received interest, it would have been wrong, under the circumstances of this case, to have charged him with interest.

The amount admitted by Rowan to be due from his intestate, on account of moneys actually collected and not paid over or accounted for, agrees very nearly with the sum as found by the circuit court.

The chief dispute in reference to the facts, is as to the uncollected debts.

Several questions of minor importance have been made; such as the admission in evidence of the inventory and the debtor or left-hand side of Alexander Reid's cash-book, in which he charged himself with cash received as administrator of James Reid, without also receiving the credit or right-hand side in evidence. That the inventory was properly admitted in evidence, there cannot be a doubt. It was abundantly identified as the inventory filed by Alexander Reid, and came from the proper files in the probate office, as one of the papers belonging to the estate of James Reid, deceased. It is impossible to determine from the record that only one side of the cash-book was received in evidence. Both the debt and credit side are copied into the record. If the complainants gave in evidence the debtor side, the defendant would certainly have the right to offer the credit side of the same account in connection with it, the court being at liberty to give such credit to the entries on either side, as from all circumstances of the case it should believe them entitled to receive.

Before closing this opinion, we cannot forbear remarking upon the many defects in the record, and the careless manner in which it has been made up. From beginning to end not a

single paper appears ever to have been filed, the clerk having wholly omitted to copy the file marks, or state when the papers were filed. Witnesses were examined orally before the court on the final hearing, and their evidence is set forth in a bill of exceptions, which contains all the evidence in the case, so far as the record shows, and which this court is bound to presume was the case; yet the court below found several facts in the decree for which there is not a particle of evidence in the record.

Leaving out the admissions of Rowan in his answer, which ought not to be taken as conclusive against Alexander Reid's estate, since he denies all knowledge of said Alexander's acts except such as he has derived from the records and papers pertaining to the estate of James Reid, and the papers and books of the said Alexander, and there is no evidence to show that James Reid left any real estate, or if he did, that Alexander Reid ever collected any rents from it; and yet Alexander's estate is charged in the decree with $470.25 in rents collected by said Alexander from the real estate of James Reid, deceased.

It might, perhaps, be inferred from some of the vouchers given in evidence by the defendant, that Alexander Reid had at some time received something in rents, from real estate, but the record furnishes no means of determining what amount, or when.

Out of $4,977.44 found to be due complainants by the decree, $4,324.72, or more than six sevenths of the whole amount, is decreed to the heir, now Rebecca Bowles; while only $652.72, or less than one seventh, is found to be due to Mrs. Kirkpatrick. There was doubtless evidence before the circuit court to justify this distribution; but the record furnishes no means of ascertaining how much had been paid to each distributee, and of course it is impossible to determine how much is now due to each. In our view of the case, it becomes important to determine this fact, which there is no possible way of ascertaining from the record, and for this, if for no other reason, the cause would have to be remanded.

Had the objection been made, this court would have refused to entertain jurisdiction of so imperfect a record; but as both parties treated the record as complete, the court has proceeded to settle the questions involved in the case so far as the defective transcript before it could enable it to do so, and would gladly enter a final decree here to end this protracted controversy, were it possible from the record to understand what the real facts were.

As it is, the cause must be remanded, with leave to both

parties to produce additional evidence, and with directions to the circuit court to take such further steps in the case as to law and justice appertain, and are consistent with this opinion.

The decree is reversed, and the cause remanded, the costs in this court to be equally divided between the parties.

*Decree reversed.*