HARRIET C. WHITNEY *et al.*

*v.*

JASPER J. PEDDICORD *et al.*

1. EXECUTORS—*what is reasonable care and discretion.* When executors, who are chargeable with payment of debts out of proceeds of the estate, refuse to redeem from a mortgage sale, considering the value of the land equalled by the amount necessary to redeem, they have acted with reasonable wisdom and discretion, and nothing more should be required, even though the land may, in a few years, greatly increase in value.

2. SAME—*culpable negligence.* When an insolvent debtor, from whom collection can not be made upon execution, offers to turn out unincumbered real estate, with clear title from a third party, and the executor neglects to receive it, whereby the debt is lost, it is culpable negligence, for which he is liable, especially if it be shown that, during the same time, he has collected debts due himself and others from the same party.

3. Executors and like persons must, in the execution of trusts, bestow that degree of diligence which men ordinarily use in the management of their own affairs; and if, through lack of taht, the interests of the trust estate are damnified, they must make good the loss.

4. PROFITS *and interest on trust funds.* He who uses trust funds to his own profit is chargeable with such profits, if they can be ascertained; or, in lieu thereof, with interest on the sum used.

APPEAL from the Circuit Court of Christian county; the Hon. HORATIO M. VANDEVEER, Judge, presiding.

Messrs. O'MELVENY & LANSDEN, for the appellants.

Messrs. NELSON & ROBY, and Messrs. EDEN & ODOR, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery, brought by the heirs and devisees of John Whitney, deceased, against his executors, Peddicord and Smith, charging them with an unfaithful execution

of their trust, and praying for an account. Some question is made by defendants' counsel as to the jurisdiction of the court in a case of this character, but that is so well settled as to need no comment.

The appellants insist that the amount decreed to them by the circuit court was altogether insufficient to cover their just claims, and urge three different grounds for reversing the decree.

The first is, that the executors were guilty of a violation of their duty in not redeeming a tract of land purchased by Whitney from one Moore, and sold under a mortgage given by the former to the latter to secure the payment of the purchase money. The proof in regard to the value of the land is very contradictory, but the inevitable inference to be drawn from it is, that the executors are not fairly chargeable with the want of either good faith or sound discretion in declining to redeem.

The property, by the sale, had paid the debt, and thus relieved the estate to that extent. It was soon after the opening of the civil war. Real estate, as is shown by the evidence, was rapidly declining in value, and extreme uncertainty prevailed as to the future.

It is true, in the course of a few years lands rapidly rose again, but at that time it was doubtful whether the premises sold under the decree exceeded in value the amount necessary to redeem.

We can not charge these executors with official delinquency merely because they failed correctly to forecast the future. They acted in this matter with reasonable wisdom and discretion, and nothing further can be required.

The next alleged error is the refusal of the court to hold the executors responsible for not collecting any part of the judgment against Rea. It appears by the evidence that there were numerous judgments against him, for considerable amounts, besides that in favor of the executors, and that executions were issued upon them, all of which were returned

*nulla bona.* It further appears that he controlled a considerable amount of property not held, as we infer, in his own name, and that ultimately he settled with the greater part of his creditors by full or partial payments.

While Rea was in this condition of reputed but not complete insolvency, one Garver was holding for him the title to a quarter section of land, and Rea offered to have this land conveyed to the executors in satisfaction of the judgment. According to his testimony, they both accepted the proposition, and the matter rested upon this verbal arrangement for several years, Rea being ready to consummate it at any time. But either through the carelessness of the executors and their indifference to the interests of the estate, or, as Peddicord swears, because they doubted their right to take land in payment of the debt, the arrangement was never completed, and the judgment was never paid. After retaining control of the land from 1863, when he first made this proposition, until 1867, when Peddicord informed him a guardian had been appointed who would probably take the land, Rea finally sold it to another person, and it was lost to the estate through what seems the sheer supineness of the executors. No explanation at all satisfactory is given. There is no question as to their power to make such an arrangement, and if they doubted that, they had learned that Rea controlled the title, and they should have endeavored to subject the land to the payment of the judgment by legal means, if they were not disposed to accept a voluntary conveyance in satisfaction of the debt.

The law does not require any one to accept the office of executor, but if one does accept it, he must discharge its duties with as much fidelity and care as prudent men ordinarily bestow upon their own affairs. As we have had occasion to remark in another case at the present term, a degree of strictness is not to be applied in the construction of their acts, or those of guardians, which would deter responsible men from the acceptance of such positions. When they have acted with reasonable diligence and an honest desire to do their duty

faithfully, a mere error of judgment in what was fairly matter of judgment or opinion, should not make them liable merely because subsequent events have shown they did not pursue the wisest course. But, on the other hand, they must be held to that degree of diligence which men ordinarily use in the management of their own affairs, and if, through lack of that, the interests of the trust estate are damnified, they must make good the loss.

Such we consider the position of the executors in the present case, so far as relates to the Rea judgment. They showed a culpable supineness in this matter which makes it necessary to require them to repair the injuries caused by their neglect. In stating the account, they must be charged with whatever the proof may show was the value of the land when offered to them by Rea, if, as must be assumed from this record, the title to the land was subject to his control. As to this part of the case, the parties should be permitted to produce further proof. The decree should, of course, provide that the executors, when they have paid the amount found due, as the value of the land when it was offered, shall be the owners of the judgment in their own right.

The only other question for consideration is, whether the executors should be charged with interest upon the money actually in their hands. That they should not be charged with interest during the war is plain, for the proof shows that the money was left on deposit in the banking house of Peddicord & Burrows, the senior partner being one of the executors, and that during all that period this firm had large amounts of unemployed capital on deposit in addition to the customary bank reserves. This state of affairs, however, is not shown to have existed since the war. More or less money has been all the time in the hands of the executors, and nominally on deposit in this banking house. On the evidence before us, it is a just presumption that it was used in the business of the bank. It is a familiar principle that an executor or administrator who has used the trust funds to his own profit,

is chargeable with such profits, if they can be ascertained, or in lieu thereof, with interest on the sum used.  *Rowan* v. *Kirkpatrick*, 14 Ill. 1.

Under this rule, while Smith is not liable, Peddicord should be personally charged with six per cent interest, since the war, on such proportion of the average deposits with the firm of Peddicord & Burrows, of the funds of the estate, as was used for his benefit.  If he received one-half the profits of the banking house, he should be charged with interest on one-half the average amount of the money of the estate kept on deposit; and the same rule should be applied if he had a different interest in the business.  It would be unjust to charge him with interest for such portion of the profits on these deposits as was received by his partner, Burrows.

The complainants have constantly resided out of the State. The executors have sent to them or to their guardian several sums of money, and have been always ready to make a final settlement.  There is no ground for charging them jointly with interest, or for charging Peddicord except to the extent and for the reason above stated.

For the error of the court in holding the executors not liable in reference to the Rea judgment, and that no interest should be allowed, the decree is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*