## REUBEN HOLEMAN
### v.
## VICTORIA BLUE.

1. GUARDIAN AND WARD—DUTIES OF GUARDIAN.—Guardians of minors must discharge their duties with as much fidelity and care as prudent men ordinarily bestow on their own affairs, and when they have thus acted they are not responsible for a mere error in judgment; on the other hand if they do not act with that degree of diligence which men ordinarily use in their own affairs, and the estate is damnified, they must make good the loss.

2. LOSS OCCURRING THROUGH AGENT.—Where a guardian seeking to recover a claim against the government for his ward, employed a reputable person as claim agent, using ordinary diligence in such employment, he is not responsible for loss to the estate by reason of the illegal act of such agent, whereby the agent appropriated the money collected to his own use.

APPEAL from the Circuit Court of Warren county; the Hon. JOHN G. GLENN, Judge, presiding. Opinion filed February 24, 1882.

Messrs. STEWART & GRIER, for appellant; that in such cases, courts will do what is equitable in the premises, cited 1 Perry on Trusts, 492; Bond v. Lockwood, 33 Ill. 212; In re Steele, 65 Ill. 322; Bennett v. Hanifin, 87 Ill. 31.

When trustees act in good faith, courts will treat them with indulgence: Thompson v. Brown, 4 Johns. Ch. 619; McElheny v. Musick, 63 Ill. 328; Osgood v. Franklin, 2 Johns. Ch. 1.

A trustee is only liable for a failure to use such reasonable

care as a cautious man would use in the management of his own estate: Ferguson v. Lowrey, 54 Ala. 510; Christy v. McBride, 1 Scam. 75; Pierson v. Thompson, 1 Ed. Ch. 212; Wharton on Negligence, § 515; Carpenter v. Carpenter, 12 Rel. 544; 2 Story's Eq. § 1269; Whitney v. Peddicord, 63 Ill. 249; Kee v. Kee, 2 Gratt. 116; Gould v. Hayes, 19 Ala. 438.

A trustee is not an insurer against losses which ordinary sagacity could not prevent: Rubottom v. Morrow, 24 Ind. 202; Noble v. Jones, 35 Tex. 692.

Mr. I. M. Kirkpatrick, for appellee; upon the liability of the guardian, cited 3 Wait's Actions and Defenses, 594; Scott v. Carruth, 9 Yerg. 418; Tuttle v. Robinson, 33 N. H. 104; Bond v. Lockwood, 33 Ill. 220; Jenkins v. Plumb, 6 Mod. 93; Moore v. Beauchamp, 4 B. Mon. 74; Schunler's Domestic Relations, 474; Hemphill v. Lewis, 7 Bush, 214; Story on Agency, § 452; Addison on Torts, § 1197.

A trustee is responsible for the criminal acts of agents employed by him: 1 Perry on Trusts, § 441; Rowland v. Witherden, 11 E. L. & E. 131; Ingle v. Partridge, 32 Beav. 661; Robinson v. Armstrong, 28 Beav. 123; Thompson v. Finch, 22 Beav. 316; Ghost v. Waller 9 Beav. 497; Moses v. Levi, 3 Y. & Coll. 359; Bostock v. Fleyer, 1 L. Rep. 28; Adair v. Brimner, 74 N. Y. 564; Chambers v. Minchin 7 Ves. 186; Shipbrook v. Hurchinbrook, 16 Ves. 478.

Lacey, J. This was a case of citation commenced by appellee against appellant in the county court, to compel him to account for certain back pay and bounty due from the government of the United States to the appellee, as the heir of her father Wm. H. Smith, deceased, who was a private in Co. F., First Iowa Cavalry Volunteers.

The claim in question was $288.83, arising from an " Arrears of pay and bounty certificate No. 496,025," payable to appellant as the guardian of Victoria Smith, which was the maiden name of appellee.

Appellant as the guardian of appellee had received a considerable amount of other moneys coming to her from the same source for pension and back pay, and on the 23d day of Febru-

ary, A. D. 1876, had made out and filed with the county court what purported to be a final report of all his dealings and transactions, and of all moneys and effects received and paid out on account of appellee, and in which report no account was made of the money in question, which report had been approved by the county court.

This proceeding was intended to open up the said report and to charge appellant with the sum represented by the certificate. The county court after hearing, allowed the claim and ordered the appellant to pay over the sum in question with six per cent. compound interest from Oct. 30, 1868, the day the money was received on the certificate, till Nov. 21, 1875, the time appellee became of age, and simple interest from that time to, Feb. 25, 1880, amounting to $514.38 the amount to be paid within 30 days. From this order the appellant took an appeal to the circuit court, which, after a hearing, affirmed the order of the county court, and ordered the appellant to account for the sum of $506.06, from which an appeal is taken to this court.

In reference to the matter of the collection of the back pay and bounty in question, it appears that appellant was appointed guardian for appellee some time in the year A. D. 1866, and that prior to that time one James M. Skinner, an attorney-at-law and pension claim agent, had been employed by one John Duff, the step-father of appellee, to look after and collect her pension and back pay. It appears from the evidence that Skinner was a lawyer in good standing and of good reputation for honesty and integrity in his profession, doing business in the city of Monmouth, though not a man of much means.

The appellant employed him to collect from the government the various claims of appellee, and Skinner had done all the business faithfully and honestly, and paid over all the money until this claim was collected. The appellant made application for this claim through Skinner, and it was allowed, and the certificate issued payable to appellant. The appellant charges and claims that Skinner forged his name to the receipt and order for the payment of the money attached to the certificate, by which means the latter was enabled to collect the money. This question was submitted by the court to the jury, and the

jury found the issue for the appellant; that Skinner had forged his name to the receipt.

We think the evidence amply sustains such finding. We are not informed whether the court below disregarded the finding of the jury and found differently, or whether it found that appellant was guilty of negligence outside of such finding in favor of appellant. But we are of opinion that such finding ought to be considered as correct, and the verdict of the jury sustained.

In order to come to a clear understanding of what should be the liability of the appellant it will be necessary to determine the rule applicable to the measure of the liability of a guardian in dealing with the trust fund in his hands, and the collection of funds due his ward.

It is not necessary to go outside of the decisions of the Supreme Court of this State to find what is or should be the rule. In the case of Whitney et al. v. Pedicord et al. 63 Ill. 249, Chief Justice Lawrence defines the rule as follows: "An executor or guardian must discharge the duties of his office with as much fidelity and care as prudent men ordinarily bestow on their own affairs." "A degree of strictness is not to be applied in the construction of their acts which would deter responsible men from the acceptance of such positions." When they have acted with reasonable diligence and honest desire to do their duty faithfully, a mere error of judgment in what was fairly matter of judgment or opinion, should not make them liable merely because subsequent events have shown they did not pursue the wisest course.

But on the other hand, "they must be held to that degree of diligence which men ordinarily use in the management of their own affairs, and if through lack of that, the interest of the trust estate are damnified, they must make good the loss." See, also, McElheny v. Musick, Ibid. 328. The case of Christy and Wife v. McBride, 1 Scam. 75, is very much in point, as the loss in that case, as in this, occurred through the defalcation of the collecting agent. McBride, the administrator of deceased, held three notes on one John Kingley for $800. The latter resided in the State of Virginia, and McBride sent the

notes to one Tate, who collected them and appropriated the money to his own use, and was insolvent.

McBride did not know Tate, but made inquiries before sending the notes to him for collection, of the county clerk of Randolph Co., Ill. Tate was reputed to be in solvent circumstances, and was sheriff of Washington County.

In deciding the case, the court say that the administrator acted prudently and honestly; his agent was a person of reputation and property. "If the administrator acted for the benefit of the estate, used proper diligence and acted with ordinary care and circumspection in the discharge of his trust, he ought not to be held answerable for losses which could not have been foreseen, and which ordinary prudence may not guard against." "The general principle which seems to run through all the authorities as to his liability, recognizes the doctrine that if he acts honestly and prudently, though there be a loss to, or diminution of the estate, he will not be liable." And the court in that case refused to charge the administrator with the loss.

Taking this as an established rule in this State, what more would an ordinarily prudent man engaged in his own affairs, have done, than the appellant did in this case?

He had a claim for back pay and bounty against the government of less than three hundred dollars. It was his duty to collect it; not having the necessary skill or information himself to proceed in its collection, he employed a licensed pension agent and attorney-at-law who had been engaged in his profession some years, and whose reputation was good for honesty and integrity. He makes inquiry from time to time of his attorney and agent in regard to this claim, but was told he could not hear from it; all the time the same agent was collecting the other pension money and properly accounting for it; till finally the agent absconds, and appellant ascertains that this claim had been adjusted, and the agent Skinner, by means of forging his name to a receipt and power of attorney, had collected the money and converted it to his own use. No reasonable man certainly would anticipate such a result as this.

It is almost the universal custom to entrust collections of

Holeman v. Blue.

this kind to agents whose reputation is good. It would not be reasonable to anticipate that a man of good character as Skinner was, would commit a forgery and lay himself liable to criminal prosecution in the manner in which he did.

The appellant was justified in relying upon the law that required his signature to the receipt after the allowance and adjustment of the claim before it could be collected.

It is claimed that appellant should have watched his agent more closely, and have gotten others to have written sooner, to have found out whether the claim was collected or not.

For that he testifies that at one time when he was making inquiries about the claim, and Skinner wrote a letter to the department, that he had his suspicions aroused for the reason that Skinner refused to allow him to carry the letter to the post office, saying his business called him there twice a day, and that he would take it. It is not very clear when this was, but if it was four months before Skinner left, as he testifies, there was nothing wrong at that time, because Skinner left Dec. 16, 1868, and the claim was not received by Skinner till the latter part of October, 1868, and writing would have developed nothing if prompt measures had been taken.

And there is nothing unusual in these departmental delays and nothing in itself that should cause uneasiness, unless the delay is very prolonged. Sometimes these claims are years in being adjusted.

We are not able to see from a careful examination of the evidence that the appellant has been guilty of any greater negligence in collecting this claim and in choosing his agent, than any ordinarily prudent man might have been.

Trustees of this kind are not held to be insurers, and they are only bound to use ordinary care.

The appellant in this matter seems to have acted in the best of faith, and in what he has done, he has aimed to act for the best interests of the appellee.

Had appellee been of age, and acting for herself, and had acted with ordinary prudence, this loss would have been just as liable to occur.

We think under the evidence, applied to the rules of law

governing such matters, the appellant should not be required
to pay this loss.

The order of the court below is therefore reversed and the
cause remanded.

Reversed and remanded.