## JOHN W. CORRINGTON
### v.
## JAMES C. CORRINGTON ET AL.

1. PROBATE JURISDICTION—EXECUTOR'S ACCOUNT.—Appellant, as executor, filed his account in the county court, to the approval of which appellees filed objections in regard to certain sales of real estate. The only question before the court in reference to these sales was whether or not appellant, as executor, had committed a *devastavit* by selling the lands at an undervaluation when he might have sold them for more. *Held*, that a court of probate had jurisdiction to inquire into this question.

2. LIABILITY OF EXECUTORS.—When executors have acted with reasonable diligence and an honest desire to do their duty faithfully, a mere error of judgment, in what was fairly matter of judgment or opinion, should not make them liable merely because subsequent events have shown they did not pursue the wisest course. But, on the other hand, they must be held to that degree of diligence which men ordinarily use in the management of their own affairs. The court is of opinion that the evidence in this record fails to show that appellant has failed to exercise that reasonable care, either in the sale of the land or in the matter of rentals.

APPEAL from the Circuit Court of Morgan county; the Hon. C. EPLER, Judge, presiding. Opinion filed October 3, 1884.

Messrs. KETCHAM & HATFIELD, for appellant.

Messrs. BROWN & KIRBY, and Mr. O. P. THOMPSON, for appellees; that the county court exercises equitable jurisdiction in the adjustment and settlement of claims against estates, cited Moore v. Rogers, 19 Ill. 347; Dixon v. Buell, 21 Ill. 203; Pahlman v. Graves, 26 Ill. 405; Moline Water Power v. Webster, 26 Ill. 234; Wilson v. Kirby, 88 Ill. 566.

Corrington v. Corrington.

McCulloch, J.   Appellant, John W. Corrington, as execu-
tor of the last will and testament of his father, Joel Corring-
ton, deceased, filed his account in the County Court of Mor-
gan county, to the approval of which appellees, Wesley W.
Corrington and James C. Corrington, filed objections.   Upon
a hearing in the county court, certain of these objections were
sustained and appellant took an appeal to the circuit court.

By the terms of the will, after certain portions of the testa-
tor's real estate had been disposed of, the executors therein
named were directed to make sale of the residue in the time
and manner they might deem best for the interest of his heirs
and to distribute the proceeds equally between his six chil-
dren therein named, including appellant and appellees.

The other executor named in the will failed to qualify, and
appellant took upon himself the execution of the trust.

In the account rendered May 21, 1883, appellant charged
himself with a balance in his hands at the time of a former
report, rendered March 19, 1883, of $4,181.52; rent of farm
for 1882, $375; proceeds of sale of 79 and 64-100 acres, $2,-
389.20; proceeds of sale of 195 and 36-100 acres, $5,360.80.
In his report of March 19, 1883, he had charged himself with
rent of the farm for the year 1880, at $300, and for the year
1881, at the rate of $375.   In a former report, filed July 16,
1881, appellant had taken credit for the sum of $422.39, for
taxes paid upon the testator's land.   This sum had been car-
ried forward in his subsequent reports to his credit.

Several exceptions were filed to the reports of March 19,
and May 21, 1883, three of which were sustained by the cir-
cuit court, namely, the third, fourth, and fifth.

The third exception is to the effect that appellant had failed
to report the collection of a reasonable amount of rent for the
use of the real estate of the testator, for the years appellant
had control of it.   The fourth is to the effect that appellant
had reported a sale of all the real estate of said testator, to
appellant's two sons, taking therefor a sum far less than the
actual value of said lands.

The fifth is to the effect that the executor had charged the
estate with the payment of taxes on said lands, which were

paid in the lifetime of the testator. The proof shows these taxes to have been paid by appellant in the lifetime of his father. If he had any claim against the estate on account of such payment, he should have presented it for probate as required by the statute. R. S. Chap. 3, Sec. 72. This exception was therefore properly sustained.

The circuit court found that there belonged to said estate, one hundred and ninety-five and 36-100 acres of inclosed land, suitable for tillage and pasturage; that the fair and reasonable rental value of the same, which might have been obtained by the exercise of reasonable care and diligence, was $3.50 per acre, making a total of $1,841.28 for the three years, whereas appellant had charged himself with only $1,050 for that period. He was therefore ordered to charge himself with $791.28 additional on account of rent.

The court further found that the fair and reasonable value of the seventy-nine and 64-100 acres reported by appellant as sold to his son, J. B. Corrington, and for which it could have been sold by the exercise of reasonable care and diligence, was forty dollars per acre, making a total of $3,185.60, and that he had charged himself with only the sum of $2,389.20 on account of said sale. He was, therefore, ordered to charge himself with $786.40 additional on that account.

The court further found that the fair and reasonable price for the one hundred and ninety-five and 36-100 acres reported sold by appellant to his son, W. W. Corrington, was $45 per acre, making the total of $8,791.21, and that he had charged himself with only the sum of $5,860.80. He was, therefore, ordered to charge himself with $2,932.40 on that account.

From this decree, so made, this appeal is prosecuted. The circumstances attending the two sales of the land by appellant to his sons are not altogether above suspicion. Nothing was paid down, but each purchaser gave his note to appellant individually for the full amount of the purchase money, payable twelve months after date secured by mortgage upon the premises sold. Appellant says he loaned the money to his sons to make their purchases, and then took mortgages back upon the premises sold to secure these loans. Although

these notes were dated March 1, 1883, appellant did not, in his report of March 19, 1883, report the money in his hands. If the money was actually loaned to the sons to make the purchase, it ought to have come back immediately into appellant's hands as executor, upon his making the deed under the power contained in his testator's will. But he did not report it until May 21, 1883, when he got ready to make distribution, at which time he reported the sales as cash sales.

No attempt has been made to question the validity of the sale, but on the contrary, by their attempt to call upon the executor to account for the full value of the lands, appellees would seem to have affirmed the sale. The only question before the court below in reference to these sales, was whether or not appellant as executor had committed a *devastavit* by selling the lands at an undervaluation when he might have sold them for more.

It is first objected that the probate court had no jurisdiction to inquire into this question, but that appellees' proper remedy was in a court of equity. By the sale of the land as well as by the terms of the will itself the real estate directed to be sold was converted into personalty. Rankin v. Rankin, 36 Ill. 293. If sold for less than its value when more might have been had for it, this would have amounted to a waste or *devastavit* of the estate. Lomax on Executors, Ch. 4, Sec. 3. It was, therefore, within the province of the court of probate to correct the account by charging appellant with the value of the property sold. Wadsworth v. Connell, 104 Ill. 369. This objection is, therefore, not well taken.

The principle of law applicable to this case is that when executors " have acted with reasonable diligence and an honest desire to do their duty faithfully, a mere error of judgment in what was fairly matter of judgment or opinion should not make them liable merely because subsequent events have shown they did not pursue the wisest course. But, on the other hand, they must be held to that degree of diligence which men ordinarily use in the management of their own affairs, and if through lack of that the interests of the trust

estate are damnified, they must make good the loss." Whitney v. Peddicord, 63 Ill. 249.

Tested by this rule we do not think the decree of the court below is sustained by the evidence. Several witnesses were examined as to their judgment of what the land was worth at the time of the sale, but none of them testify to any offer made to appellant of anything near the amount the court found he could have had by the exercise of reasonable diligence. Robinson testified that in his judgment the land was worth, on March 1, 1883, fifty dollars per acre; that he then wanted to buy it for his son-in-law, Salyers; that he had a conversation with appellant about it, who said that he need not look at it for less than forty-five dollars per acre; that he would not give that, but afterward examined it with Salyers, and they both thought forty dollars about right. Salyers testifies this examination took place in the fall of 1881; that he would have given that price for it then if he had sold his farm, but for that reason did not try to buy it.

John Oder testifies he examined the land with a view of buying it in September, 1882, but was then told by appellant that he had priced it to his son William at $30 per acre, and could not price it to any one else until he had heard from him. This witness thought the land was worth $45 to $50 per acre, but he did not profess to be acquainted with the value of land in that neighborhood. He made no offer.

The following named witness, who had known the land for some years, gave its market value on March 1, 1883, as follows: William Latham, $50; John Virgin, $50; James P. Dewees, $40 to $45; William T. Boyce, $45 to $50; but none of them testify to any opportunities appellant had for selling at any of those prices.

On the other hand it appears that the land had been rented out for at least twenty-five years; that the buildings were old and in bad condition; the fences were worn out, the soil impoverished and overgrown with noxious weeds. Appellant made several attempts to sell the land to parties wishing to purchase, but failed. Thomas Berry examined it with reference to a purchase, but would not make an offer for it on

account of its condition. Newton Reed examined it with ref-
erence to a purchase, and offered $30 per acre for it, which he
considered all it was worth. He was not well acquainted
with the value of lands there, but wanted to buy this for the
timber that was on it, which he regarded as the most valuable
part of it. Richard Ruble and Jacob Strawn, who had known
the farm for some years, say the land was not worth more than
$33 and $30 per acre, respectively. The testimony of these
witnesses alone would tend very strongly to show that appel-
lant, after keeping the land for three years and offering it for
sale all that time, had not greatly abused his trust.

But the most satisfactory evidence in the case is the esti-
mate put upon the land by the parties interested in it. Joel
Corrington died leaving six children his heirs-at-law, namely:
Rosaline Allen, Emily E. McCoy, Frances Rowland, Wesley
W. Corrington, John W. Corrington (appellant), and James
C. Corrington, all of whom were interested in the land as
devisees, or rather as legatees of the fund to be derived from
its sale. James C. and Wesley W. Corrington, both of whom
seem to be non-residents of the State, are the only ones that
file exceptions to the report. Mrs. Rowland sold her interest
to appellant at $30 per acre, so that at the time of the sale in
question, appellant was the owner of two shares or one third
of the whole. Mrs. McCoy and Mrs. Allen acquiesce in the
price obtained for the land. Appellant had offered the land
to each of them at $30 per acre, but they neither purchased
themselves nor did they offer to produce a purchaser at a
higher price.

James C. Corrington, one of the objectors, saw appellant in
the fall of 1881, who told him then the land was run down
and thought he could not get more than $25 or $30 per acre,
but that he told appellant the heirs would never be satisfied
with that price, and he had better not sell it for that. Appel-
lant and his son, John B. Corrington, both testify that in that
conversation appellant offered him the land at $30 per acre,
which offer he declined, although according to his own testi-
mony he then had $6,000 cash in bank. If the land at that
time could have been sold readily for even $40 per acre it

would seem very strange that he did not secure it for himself. Appellant kept the land for more than a year thereafter, and if it could have been sold for a higher price than appellant got for it, it seems strange those most interested in it, knowing as they did all the facts, did not procure a purchaser.

Wesley W. Corrington, the other objector, on the 27th day of March, 1882, wrote to appellant, apparently in answer to a letter from him, saying $30 per acre was his best offer for the land; that he, said Wesley, would give $31 per acre, and requested an immediate answer. Again, on the 29th day of August, 1882, he wrote again, offering $33⅓ per acre, paying one half down on the first of March, 1883, and the remainder in two equal payments, with interest at six per cent. These were the highest offers appellant at any time had for the land. No reason appears to be given in the evidence why the last one was not accepted. It seems to have been made in good faith, after appellant had had the land for three years without any better offer. Appellant ought to explain why this offer was not accepted, or be charged with the amount of said offer in his settlement.

But the proof falls far short of showing that appellant, by the exercise of reasonable diligence, might have sold the land for the prices charged against him in the decree. It does not appear that he failed to give due publicity to the fact that the land was for sale, or that he failed to make use of reasonable efforts to induce persons wishing to purchase to examine it with reference to its sale. A large discretion was confided to him by the will, to sell in the time and manner he might deem best for the heirs. The evidence shows that he made repeated efforts to sell to persons wishing to buy, and failing in that offered the land to each of the heirs at $30 per acre, with the results before mentioned. We are unable to see in what respect he is at fault, unless it be in his failure to accept the offer of said Wesley W. Corrington.

The same might be said as to the rents. Upon the point as to what would have been a fair and reasonable rental value the witnesses differ in opinion very materially. But it appears from the evidence that on the 26th day of February,

1879, which was in the lifetime of the testator, appellant and his two sisters, Mrs. Allen and Mrs. McCoy, had, as heirs of said Joel, rented the land to William W. Corrington, the son of appellant, who afterward purchased a portion of the land, he to pay the taxes and put the farm in fair repair for the first year's rent; for the second year he was to pay $300, and for the third year, or so long as the farm was to rent, he was to pay $375 per year. If this agreement was made under the authority of the testator, by his three children above named as his agents, we can see no reason why it would not bind the estate. But even if this were not so, it does not seem that any objection was raised to it by any of the parties interested until after the sale of the land and appellant had made his report. This is a circumstance tending to show at least that appellant was not abusing his trust. Without going over the evidence in detail as to the rental value, we are of opinion that the evidence in this record fails to show that appellant has failed to exercise that reasonable care in regard to the renting of the land, which, considering its situation and condition, a reasonably prudent person would have exercised in respect to his own.

For these reasons the decree of the circuit court will be reversed and the cause remanded for further proceedings.

Reversed and remanded.